## HAYNES v. FRATERNAL AID UNION et al.

District Court, D. Kansas, First Division.
May 31, 1929.

No. 1234–N.

306

A. R. Lamb, of Coffeyville, Kan., and L. S. Harvey, of Kansas City, Kan., for plaintiff.

A. L. Berger, of Kansas City, Kan., F. M. Pearl, of Hiawatha, Kan., Geo. R. Allen, and Wheeler, Brewster & Hunt, all of Topeka, Kan., for defendant.

POLLOCK, District Judge. The plaintiffs, certificate holders in a fraternal insurance society, complain that certain officers of the society are spending the society's money illegally; are paying themselves, their relatives, and their friends sums in excess of what they are entitled to; are spending society money for the personal purpose of perpetuating themselves in the politics of the society, and that a consolidation is planned, largely, it is claimed, for the purpose of the personal profit of the promoters of the plan. It is also complained that the president is an executive officer of a competing society, and cannot successively serve his two competing masters. The prayer is that the alleged derelict officers account to the society for the moneys wrongfully taken from the society, and pay it back to the society; to enjoin further unlawful acts; and for a temporary receiver. A motion to dismiss has been filed, briefed, and submitted.

As to the prayer for injunction and receiver, the defendants cite a Kansas statute (Laws Kan. 1927, p. 338, c. 231) which they say is binding on this Kansas corporation. It provides that, whenever a society "shall exceed its powers, or shall conduct its business fraudulently," it shall be excluded from the state; that, whenever it comes to the knowledge of the commissioner of insurance that such things are being done, he shall ask the society to quit, and, if it does not, he shall ask the Attorney General to proceed in court. It thus provides:

"No injunction shall be granted or receiver appointed by any court in this state against any society authorized to do business under this article, except on application of the Attorney General at the request of the commissioner of insurance." Laws Kan. 1927, p. 339, c. 231.

If this statute is effective, the only chance of a policy holder to get an injunction or receiver is to bring his complaints to the attention of the commissioner of insurance. This statute was passed in 1898 (Laws Kan. Sp. Sess. 1898, c. 23), and amended in 1927 to include the words "or receiver appointed." The plaintiffs' policies were issued prior to 1927.

Does this statute foreclose the plaintiffs, all of whom are nonresidents of Kansas? It is axiomatic that the process of the federal courts cannot, in the ordinary instance, be regulated or curtailed by state statutes. If such could be done, the state could abolish federal courts altogether. The law is clear. Burnrite Coal Co. v. Riggs, 274 U. S. 208, 47 S. Ct. 578, 71 L. Ed. 1002; Waterman v. Canal-Louisiana Bank, 215 U. S. 33, 30 S. Ct. 10, 54 L. Ed. 80; McGarry v. Lentz, 13 F.

(2d) 51 (6 C. C. A.)., In the case of the ordinary life insurance company, the statutes of the state of its incorporation do not become a part of its contracts made in other states. New York Life Ins. Co. v. Dodge, 246 U. S. 357, 38 S. Ct. 337, 62 L. Ed. 772, Ann. Cas. 1918E, 593; Northwestern Mut. Life Ins. Co. v. McGue, 223 U. S. 234, 32 S. Ct. 220, 56 L. Ed. 419, 38 L. R. A. (N. S.) 57. A fortiori, a policy holder of another state is not bound by statutes passed after his policy is issued; as a matter of fact, such after-enacted statutes do not affect the rights of resident policy holders, for they may impair the obligation of his contract. Priest v. Bankers' Life, 99 Kan. 295, 161 P. 631.

But we are not dealing with an ordinary contract of insurance made by an ordinary life insurance company. We are dealing here with a class of insurance in which the policy holders are both the insurer and the insured. Now it is clear that a man may make a contract agreeing not to apply for a receiver or an injunction, and may do this by a reference in his contract to existing statutes, whether they be statutes of his own state or of another. The state statute then limits the policy holders' rights, not by force of the statute (for the statute cannot impair the powers of the federal judiciary), but by force of his own contract. And his contract may incorporate by reference statutes or by-laws passed in the future. The plaintiffs' contracts are not attached to the bill, as they should be, but it is asserted, and not denied, that their contracts are subject to existing and future statutes and by-laws.

Assuming they do, plaintiffs have contracted away their rights to injunction and receivership. In a case involving the rights and liabilities of members of a fraternal benefit society like the one at bar, the Supreme Court has held that their rights and liabilities are determined by the decisions of the state of its incorporation. Supreme Council of Royal Arcanum v. Green, 237 U. S. 531, 35 S. Ct. 724, 59 L. Ed. 1089, L. R. A. 1916A, 771. The Supreme Court of Kansas has definitely held that a member of such a society is bound by changes made in the by-laws after his policy was issued, increasing his dues, notwithstanding a provision in his contract agreeing not to raise his dues. Dey v. K. & L. of S., 113 Kan. 86, 213 P. 1066.

Moreover the Supreme Court of the United States has held the same. Supreme Lodge, Knights of Pythias, v. Mims, 241 U. S. 574, 36 S. Ct. 702, 704, 60 L. Ed. 1179, L. R. A. 1916F, 919; Supreme Lodge, Knights of Pythias, v. Smyth, 245 U. S. 594, 38 S. Ct. 210, 62 L. Ed. 492. In the Mims Case, the Supreme Court said:

"As to later members, we can have no doubt, notwithstanding the difference of opinion in state courts, that the right to amend extends to a change in the rates to be paid: Persons who join institutions of this sort are not dealing at arm's length with a stranger whose mode of providing for payment does not concern them, but only his promise to pay. They are joining a club the members of which have to pay any benefit that any member can receive. The corporation is simply the machine for collection and distribution. Its charter expressly provides by section 5 that it 'shall not engage in any business for gain; the purpose of said corporation being fraternal and benevolent.' It is manifest, therefore, that it would be a perversion of its purposes if, through some ambiguity of phrase, the necessary source of benefits were closed in favor of certain members, while their right to insist upon payment remained. The essence of the arrangement was that the members took the risk of events, and if the assessments levied at a certain time were insufficient to pay a benefit of a certain amount, whether from diminution of members or any other cause, either they must pay more or the beneficiary take less."

A statute identical with the one at bar was held to bar a policy holder by the Circuit Court of Appeals of the Sixth Circuit, in McGarry v. Lentz, 13 F.(2d) 51, by this court in an opinion in Soptich v. St. Jos. Ass'n (No. 741-N, Equity) 34 F.(2d) 566, and by many state courts.

I conclude, therefore, that the plaintiffs have bartered away their right to an injunction or a receiver. It follows that the questions of the propriety of employing relatives, or of the election of the officers who are holding executive positions with other societies, or who are on a part time basis, or of the wisdom of proposed consolidations, cannot be determined in this action. Whether officers have paid themselves or others sums in excess of their authority, or fraudulently, or spent money for personal purposes, or, if consolidation was effected, whether money was illegally spent, are quite different questions to which I now turn.

This leaves the prayer for an accounting. No statute or contract bars the right of a policy holder to require the officers to pay back money wrongfully diverted. No contract or statute gives the officers a right

308

to appropriate society money for their personal use. The defendants argue that all the money claimed to be misappropriated came out of the expense fund, and that plaintiffs have no interest in that fund. If the policy holders have no interest in that fund, who does? Do defendants seriously tell the court that, as long as the mortuary and reserve funds are not disturbed, the officers can dip into the expense fund as freely as they wish, and for purely personal purposes? The plan of these societies, defective and as heedless of the rights of the members as they may be, still is not so bad as to give any one a license to steal, even from the expense fund. The membership has at least a theoretical right in all the assets of the society; the membership has at least a right to see that the society money is not misappropriated to the personal use of the officers. It cannot be true that the directors can set up an expense fund, and then appropriate it to their own uses, and defend upon the proposition that they did not take anything from other funds. The bill alleges wrongful appropriations; whether the proof will substantiate the charges cannot now be determined. But, if there have been misappropriations, the officers must account to the society for them.

■ The state statute does not in terms provide for such an action against the officers by the Attorney General. It may be, by implication, he has such power. But there is no prohibition on the policy holder maintaining such suit, and in the absence of such prohibition, the statutory remedy is but cumulative. Dollar Savings Bank v. U. S., 19 Wall. (86 U. S.) 227, 22 L. Ed. 80; Updike v. U. S., 8 F.(2d) 913 (8 C. C. A.); U. S. v. Updike, 32 F.(2d) 1 (8 C. C. A.).

■ Objection is made because the proportionate interest of the plaintiffs in the sums alleged to be misappropriated does not amount to $3,000. It is also urged that the interests of several plaintiffs cannot be joined, and Lion Bonding Co. v. Karatz, 262 U. S. 77, 43 S. Ct. 480, 67 L. Ed. 871, Robbins v. Western Auto Ins. Co. (C. C. A.) 4 F.(2d) 249, and other cases, are cited. Those are cases where each plaintiff claimed that somebody owed *him* something, and are not in point here. The plaintiffs claim that the defendants owe the *society* money in excess of $3,000. In such a case, it is the amount recoverable by the society, and not the plaintiff's undivided and indirect interest therein, that counts. The point is ruled by Hutchinson Box Board & Paper Co. v. Van Horn (C. C. A.) 299 F. 424, Larabee v. Dolley (C. C.)

175 F. 365 (reversed on other grounds), and cases therein cited. There is no lack of jurisdiction here.

■ Objection is made because the plaintiffs did not apply to the directors, and ask them to have the corporation sue themselves. Such a demand, being manifestly useless, is unnecessary. The directors cannot be both plaintiffs and defendants, nor defendants and judges.

The motion to dismiss the bill, in so far as it asks for an accounting, will be denied. Upon the joinder of issues, an experienced and competent master, with the usual powers, will be appointed to take the proofs.

It is so ordered.