## HUGHES et al. v. ENCYCLOPAEDIA BRITANNICA, Inc.

### No. 10591.

United States Court of Appeals Seventh Circuit.

Oct. 22, 1952.

Harry Becker, Rubenstein & Becker, Chicago, Ill., for appellants.

Leo H. Arnstein, Herbert E. Ruben, Chicago, Ill. (Lederer, Livingston, Kahn & Adsit, Chicago, Ill., of counsel), for appellee.

Before KERNER, FINNEGAN and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

This is an appeal from an order of the District Court for the Northern District of Illinois, Eastern Division, dismissing plaintiffs' cause of action.

The complaint, filed on November 27, 1950, on behalf of Roland B. Hughes, Armin Eastman and Edward J. Frick, alleges that they, and each of them, are residents of the State of Illinois; that the defendant Encyclopaedia Britannica, Inc., is a New York corporation; that the amount in controversy, exclusive of interest and costs, exceeds the sum of $3000. It is then alleged that the plaintiffs are former employees of the defendant corporation; that during their employment, and on to-wit, February 1, 1944, the defendant put into force and effect a certain Retirement Income Plan for its employees; a copy of the plan is attached to and made a part of the complaint by reference. Plaintiffs then alleged that they are entitled to the benefits under said plan as therein recited, that the plaintiff Hughes was employed by defendant from October, 1941, to April, 1950; plaintiff Eastman from November, 1945, to July, 1950; and plaintiff Frick from October, 1941 to January, 1950, except for the period between February, 1944, and March, 1945. It is then charged that all contributions to the plan were to be made by the defendant; that such contributions were to be used to purchase retirement insurance with the Equitable Life Assurance Society of the

United States; that the defendant failed to make the necessary deposits with Equitable for the years 1948 and 1949, thereby depriving plaintiffs of their benefits for said years.

Plaintiffs allege that they bring the action on behalf of themselves and all other employees of the defendant similarly situated; that said employees number several hundred and it is therefore impracticable to bring them all before the court. The complaint seeks the following relief: (1) that defendant be summoned and required to answer, (2) that it be required to bring into court and pay over to Equitable the sum or sums of money necessary to continue in effect the Retirement Income Plan for the years 1948 and 1949, together with the remaining amounts to be deposited under Section 6 of the plan for the benefit of plaintiffs and other employees in similar situation.

By amendment of April 11, 1951, Elliott Williamson, employed by defendant from November, 1934, to July, 1950, and Fred Davis, employed from March, 1938, to June, 1949, were added as plaintiffs. At that time a copy of the agreement between Equitable and defendant, marked Exhibit B, was added to and made part of the complaint.

Defendant moved to dismiss the cause of action for the following reasons:

"1. The Court is without jurisdiction for the reason that the interest of each of the plaintiffs is less than the jurisdictional amount of $3000, and this is not a true class action wherein the claims of all the members of the class may be aggregated to reach the jurisdictional amount.

"2. The complaint fails to allege facts showing that the plaintiffs are proper representatives of the class which they purport to represent and, on the contrary, they are not such representatives of the class described in the complaint so as to entitle them to maintain this suit.

"3. The complaint fails to state a cause of action for the following reasons:

"(a) Plaintiffs fail to allege facts necessary to make out an equitable estoppel in their favor and there is, in fact, no basis for an equitable estoppel.

"(b) There exists no contract between plaintiffs and defendant upon which to base an action at law; at most, defendant's employee benefit plan constituted an unenforceable gratuity.

"(c) Even construing the Plan as a contract between plaintiffs and defendant, plaintiffs are bound by its terms and precluded from maintaining this action.

"(d) Even construing the Plan as a contract and refusing to give effect to its express provisions, sufficient notice was given plaintiffs by defendant to constitute an effective termination pursuant to the terms thereof."

The defendant's motion contained an alternative prayer for summary judgment under Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

In consideration and disposition of the motion to dismiss, the District Court assumed that the cause of action asserted by plaintiffs was a true class action, and proceeded to determine whether or not the complaint stated a claim upon which relief could be granted.

From the affidavits filed in support of defendant's motion and the exhibits attached thereto, the District Court made the following findings as to the Retirement Plan and its Administration:

"* * * In substance, the Plan provided that employees who, on February 1, 1944, had completed two years of continuous service and had attained the age of thirty would become participants under the Plan as of that date, provided that they had not then attained their sixtieth birthday. New employees and employees with less than two years of service would become eligible on the February 1st next preceding their completion of two years continuous service and the attainment of their sixtieth birthday. All contributions to the Plan were to be made by defendant. These

contributions were to be paid to Equitable to purchase retirement income for eligible employees according to a formula applied to each employee. The details of this formula are set out in Section 6 of the Plan. Briefly, the amount of retirement income purchased for each employee each year, was computed on the basis of the employee's monthly average earnings for the preceding calendar year multiplied by a percentage factor determined by his age at the time of his entry into service. A further provision provided for the purchase over a period of years of retirement income based on years of service occurring prior to the adoption of the Plan. When the employee attained the age of sixty-five, he would then receive an annuity determined by the amount of contributions that had been made for him. Optional provisions were provided with respect to continuation of payments to beneficiaries designated by the employee and certain death benefits also accrued under certain conditions. Section 10 of the Plan provided that if the service of any employee participating in the plan was terminated prior to the completion of five years of employment, he would receive no benefit under the Plan; it provided that if an employee's service was terminated for any reason after five years of service, but before attainment of age forty-five, he would receive the cash value of all retirement income purchased for him prior to termination of service; it provided that if the employee's service was terminated for any reason after five years of service and attainment of forty-five years, he would receive a paid-up annuity covering all retirement income purchased for him prior to termination of service.

"Pursuant to the Plan, defendant entered into a Group Annuity Contract with Equitable to take effect on February 1, 1944. Equitable thereupon issued individual participation certificates to those employees coming under the Plan. Payments were made by defendant to Equitable for all participants on February 1 of the years 1944, 1945, 1946 and 1947. In 1948 defendant purchased the retirement income under the Plan at the end of the year instead of at the beginning and, therefore, the payments for 1948 were made in January of 1949.

"Early in 1949 defendant considered a revision of the Plan which would change it to a joint employer-employee contribution plan and increase the retirement benefits provided. Defendant's exhibits indicate that intermittent notices of the proposed revision were given to the employees during the ensuing year. The revised retirement plan, providing greater employee benefits and calling for partial contributions by the participating employees, was placed into effect, dated back to January 1, 1950. Defendant purchased no annuities under the old Plan for the year beginning February 1, 1949. However, defendant asserts that it continued, and is continuing, to purchase remaining unpurchased annuities for past employee service pursuant to Section 6 of the old Plan."

The trial court regarded as pertinent and proceeded to quote the following sections of the original retirement plan:

"Section 12. Certificates. The Equitable will issue for delivery to each participant who is covered under the Plan a certificate of his inclusion under the Group Annuity Contract issued to the Company by the Equitable. Benefits under the Plan will be governed in every respect by the Group Annuity Contract. The only rights or benefits that any participant may have under the Plan shall consist only of those rights and benefits purchased for him under the Group Annuity Contract. No participant shall have rights or benefits under the Plan against the Company.

"Section 13. Limitation of Assignment. Unless otherwise provided by law:

"(a) A participant annuitant, or joint annuitant hereunder shall have no

right to assign, transfer, or anticipate his interest in any payments under this Plan, and

"(b) Such payments shall not be subject to any legal process to levy upon or attach the same for payment of any claim against any such participant, annuitant, or joint annuitant.

"Section 14. Change or Discontinuance of the Plan. In adopting this Retirement Plan for its employees, the Company has made every effort to develop a plan which will best safeguard employees' interests and which will meet future conditions in so far as they can be anticipated at the present time. The Company expects to continue the Plan indefinitely, but necessarily reserves the right to change, amend, or discontinue the Plan should future conditions in the judgment of the Company warrant such action. However, no change or discontinuance for any reason whatsoever can affect the Retirement Annuities purchased for employees prior to the date of the change or discontinuance.

"If the Plan is discontinued, the participant, whether or not he remains in the employ of the Company, will receive at his retirement date the retirement income that has been purchased for him prior to the date of its discontinuance.

"Section 15. General. All of the funds paid by the Company to the Equitable will be used solely to purchase annuities for participants under the Plan. Any sums refundable by Equitable under the contract because of the termination of participants' services without vested retirement income will be applied within the year so refundable, or within the next succeeding year, toward the purchase of annuities as herein provided for participants remaining under the Plan.

"The adoption of this Plan is entirely voluntary on the part of the Company and it shall not be construed as creating a contractual relationship between the Company and an eligible employee, nor shall it be construed as a term of any employment contract, or be interpreted to give the right to any employee to be retained in the service of the Company."

On consideration of defendant's motions to dismiss and for summary judgment, the District Court concluded that Britannica's retirement income plan did not give rise to an enforceable contractual obligation. Following the reasoning of Umshler v. Umshler, 332 Ill.App. 494, 76 N.E.2d 231, the trial court stated that such a type of pension plan wherein the employer undertakes and promises to workers, in his employment at the time the proposal is made, to make all the contributions to the plan, constitutes an unenforceable gratuity. The appellants are here contending that such a promise to pay pensions is an enforceable contract. They cite, among other authorities, Cowles v. Morris & Co., 330 Ill. 11, 161 N.E. 150; Plowman v. Indian Ref. Co., D.C., 20 F.Supp. 1; and attempt to distinguish Menke v. Thompson, 8 Cir., 140 F. 2d 786. Their argument in support of this contention is not convincing.

The Cowles case involved a retirement plan under which the employees themselves contributed to the retirement fund, and the company promised to contribute definite stipulated amounts to the fund. After the company had contributed all promised amounts and was no longer under obligation to contribute, it sold its business and discharged its employees. The portions of the pension fund represented by the contributions of employees not of pension age were returned. The plaintiffs in that case contended that the company had no right to discontinue business and stop its contributions without providing a fund sufficient for the payment of all pensions. The Supreme Court of Illinois denied their contention and dismissed their complaint for want of equity.

Plowman v. Indian Refining Co., D.C., 20 F.Supp. 1, definitely holds that the employer's promise, made to employees when they were about to be retired from service be-

cause of lack of business, that it would give them one-half of their wages for life was not supported by a valid consideration.

So far as Menke v. Thompson, 140 F.2d 786, is relevant to the instant contention, the holding of that court, as stated on page 790, should be noted. It is there said:

"The pension plan of appellee railroad company was entirely voluntary, and its benefits were, as declared in the plan, gratuities. No fund was established by the company and impressed with a trust for the benefit of its employees. The right of any employee to receive the pension provided was not made dependant upon contributions by the employee to the expense of paying the pension or to the expense of administering the pension plan. The whole burden was borne by the company. No statute then in force required of the company the assumption of the burden which it took upon itself in providing for pensions for its employees. It therefore had the right, as the District Court correctly held, to condition its bounty in such manner as it saw fit."

In the case at bar, the trial court stated that if the plaintiffs seek to give effect to the Britannica plan they are likewise bound to accept all of its express terms and those terms, under the facts and circumstances shown by this record, prevent them from maintaining their action.

In this court Britannica is still insisting that the District Court was without jurisdiction to entertain the cause. Their contention is that the jurisdictional amount required is not involved. Affidavits which they filed in support of that motion to dismiss, and which are not controverted by the plaintiffs, show the value of the claims of the three original party plaintiffs to be as follows: The plaintiff Hughes claims $1144.94; the plaintiff Frick $361.73; and the plaintiff Eastman, having been employed by the defendant company less than five years, has no interest in the Retirement Plan whatever. It is therefore apparent that the aggregate value of the claims of the original plaintiffs is less than the jurisdictional amount of $3000. Even consider-

ing the claims of the additional party plaintiffs, Williamson and Davis, whose claims respectively amount to $1600.92 and $635.-29, no individual's claim exceeds $3000, and the law is clear that this suit must fall if the interest of any one of the original plaintiffs is less than the jurisdictional amount. Only by aggregating the claims of the alleged entire class would the jurisdictional amount of $3000 be reached.

In Barron & Holtzoff's Federal Practice & Procedure, sec. 569 (Vol. 2, p. 180) the following rule is laid down:

"With respect to the amount in controversy aggregation of claims to meet the necessary jurisdictional amount is permitted in true class actions under Rule 23(A) (1), but not in hybrid or spurious class actions in which there is no joint right or interest. A spurious class action under subdivision (A) (3) of Rule 23 FRCP in which the rights sought to be enforced are several, and there is a common question of law or fact and common relief is sought, is in effect but a congeries of separate actions. Hence, each claimant must, as to his own claim, meet all jurisdictional requirements as to amount in controversy."

This court said in Matlaw Corporation v. War Damage Corp., 7 Cir., 164 F.2d 281, on page 283:

"we are not unmindful of the fact that the Supreme Court has shown increasing liberality in recent decisions permitting the class members to aggregate the value of their individual claims to make up the necessary jurisdictional amount required by Section 24 of the Judicial Code. See Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111. But the Supreme Court has never receded from or overruled the familiar rule that when several plaintiffs assert separate and distinct demands in a single suit, the amount involved in each separate controversy must be of the requisite amount to be within the jurisdiction of the district court, and that those amounts cannot be added together to satisfy jurisdictional requirements. * * *

300

"In our opinion, in order to achieve the requisite jurisdictional amount by aggregating the claims of the class which plaintiff alleges it represents, a true class action must be demonstrated. A true class action is one in which, but for the class device, the joinder of all interested persons would be essential. And Rule 23 cannot confer jurisdiction on a federal court by joining numerous plaintiffs for the purpose of aggregating the amount of their separate claims, unless the test of joint liability is met.'"

In the case at bar, there is a clear failure to meet the test laid down in the Matlaw case. Each individual employee of Britannica might under the terms of its Retirement Plan have his separate action at law sounding in contract. In such an action there would be no necessity of joining other employees. Each such employee was issued an individual participation certificate by Equitable. The amount of retirement income purchased for each employee was computed and based upon his individual age, his own earnings as such employee and upon his length of service with Britannica. No common fund was created or existed. A separate individual account was kept for each employee.

Under these authorities we are convinced that the facts and circumstances disclosed by this record show that the claims of plaintiffs cannot be aggregated to make up the jurisdictional amount. Cf. Andrews v. Equitable Life Assurance Society, 7 Cir., 124 F.2d 788; Eberhard v. Northwestern Mutual Life Ins. Co., 6 Cir., 241 F. 353; Hackner v. Guaranty Trust Co., 2 Cir., 117 F. 2d 95; Miller v. National City Bank, 2 Cir., 166 F.2d 723, and Sturgeon v. Great Lakes Steel Corporation, 6 Cir., 143 F.2d 819.

We are convinced that the District Court should have dismissed plaintiffs' cause of action since it had no jurisdiction of the proceeding because the matter in controversy did not exceed in value the sum of $3000. The District Court, acting on other grounds and assuming that it had jurisdiction of the proceeding, did sustain defendant's motion to dismiss and entered an order to that effect.

The judgment of the District Court is vacated and the complaint is dismissed for lack of jurisdiction.

KERNER, Circuit Judge, concurs in result.