**William J. TROUP, Appellant,**

v.

**Harold F. McCART et al., Appellees.**

No. 16022.

United States Court of Appeals
Fifth Circuit.

Nov. 14, 1956.

Rehearing Denied Feb. 15, 1957.

Thomas E. Skinner, Birmingham, Ala., A. C. Latimer, Atlanta, Ga., Horace C. Wilkinson, Birmingham, Ala., of counsel, Wilkinson & Skinner, Birmingham, Ala., Carter, Latimer & Savell, Atlanta, Ga., for appellant.

Wm. F. Buchanan, Newell Edenfield, Lamar W. Sizemore, Atlanta, Ga., for appellees.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

CAMERON, Circuit Judge.

Appellant Troup (hereinafter called plaintiff) brought this action on behalf of himself and the certificate-holding members of Acme Life Insurance Society (called Society), against Acme United Life Insurance Company (called Company), Harold F. McCart and twelve other individuals constituting the officers and directors of the Company, hereinafter referred to as defendants.

The gravamen of the action was that McCart and the other individual defendants, while acting as fiduciaries in charge of the assets and business of the Society, organized the new Company, transferred the Society's assets to it, issued to themselves the majority of the Company's stock and took over its management for the personal profit of defendants and in violation of their duties as such fiduciaries.

The Society had been incorporated [1] under Georgia law in 1937, and it continued to operate until 1952 when it was converted into a Regular Old Line Legal Reserve Life Insurance Company as provided by Georgia law.[2] The individual defendants initiated and took the lead in said conversion, but it was approved by all of the lodges of the Society and by its Supreme Council.

Plaintiff—along with all other certificate-holders in the Society—was notified and kept advised of the proposed action and the steps taken in effecting it, but he did not vote thereon or protest thereto until after the lapse of more than three years. Under Georgia law and by act of the Company under requirement of its by-laws the assets of the Society, though transferred to the Company, have been and are maintained as a separate block on the books of the new corporation, and the stockholders of the new corporation can never receive any dividend from those assets. Under the new arrangement all financial benefits accruing to plaintiff and the certificate-holders of the Society are identical with what they were before the conversion.

Plaintiff based his Complaints on the assertion that the Georgia laws were inapplicable to the Society because passed subsequent to its incorporation, that said laws were not complied with in the process of conversion, and in the alternative that said laws were unconstitutional under the Fourteenth Amendment if applied so as to approve the acts of the defendants in effecting the conversion. Jurisdiction was invoked upon the theory that plaintiff's was a class action and that he was entitled to recover for the class the value of the assets taken over from the Society by the Company; to have the stock in the Company held by the individual defendants declared to be held in trust for the benefit of the certificate-holders in the Society; and to have a receiver appointed to take over said stock and to administer the affairs of the Company. The claim of federal jurisdiction was based upon diversity of citizenship, plaintiff being a citizen of Florida and all defendants being citizens of Georgia.

---

1. Its name originally was Acme Life Assurance Society and the name had been changed in 1946 to Acme Life Insurance Society.

2. Chapter 56–16A Georgia Code Annotated.

Defendants moved to dismiss on the ground that plaintiff's claim did not amount to three thousand dollars, and that he was not entitled to aggregate his claim with those of the other certificate-holding members for whom he purported to speak, because he did not adequately represent said class and because his claim and theirs were not common or joint. The Court granted the motion on both grounds and also granted defendants' motion for summary judgment. The appeal is from the orders entered on those motions.

We do not reach the merits because we think that the Court below correctly decided that it was without jurisdiction.[3] The Court approached the question with becoming care and caution, and decided it only after extensive oral argument and consideration of printed briefs.

Plaintiff made the usual formal allegation that the matter in controversy exceeded, exclusive of interest and costs, the sum of three thousand dollars. This statement was denied by defendants' motion to dismiss and it is of "no avail" unless the facts sustain it. Lion Bonding & Surety Co. v. Karatz, 1922, 262 U.S. 77, 86, 43 S.Ct. 480, 67 L.Ed. 871. Plaintiff's formal statement was amplified in the Complaints by the assertion that the Society had acquired earning power, good will, agency force and going value as a society reasonably worth in excess of $200,000.00, and tangible assets of a net value in excess of $100,000.00, and a surplus of more than $120,000.00.[4] The

Complaints further alleged that the Society had in force total insurance of more than twenty-two million dollars, assets of more than one million, six hundred thousand dollars, and liabilities of one million, four hundred thousand dollars. Plaintiff brought the action on behalf of himself "and all other similarly situated certificate-holding members of the Society * * * so numerous as to make it impractical to bring all of them before the Court."

After the plaintiff had filed his Amended Complaint and the positions of the parties had been stated, the trial Court entered an order requiring the parties within a specified time to amplify and clarify their contentions.[5] The disclaimer mentioned in the note was confirmed by plaintiff's response to this order.

The certificate of membership exhibited with plaintiff's pleadings contained the provisions normally found in contracts of life insurance. It provided for payment of premiums by plaintiff and for payment by the Society of a stipulated sum in event of plaintiff's death, together with dividends;[6] for cash and loan values and for double indemnity in event of accidental death. The entire financial relationship between plaintiff and the Society was set forth in this certificate. And every other member held a similar but separate certificate defining the rights as between him and the Society.

In addition, the certificates referred to the constitution and by-laws of the Society, incorporating them as a part of

---

3. Jurisdiction was claimed entirely on diversity of citizenship and amount in controversy, 28 U.S.C.A. § 1332(a) (1). It was admitted that plaintiff's claim alone was not of the value of $3,000.00 so that federal jurisdiction was lacking unless the action was a "true" class action.

4. All of the allegations and the proof relate to the date March 31, 1952, at which time the conversion was accomplished.

5. The order contained the following: "Plaintiff disclaims any desire to proceed to recover the value of his own insurance certificate, but on the other hand, seeks to recover in behalf of him-

self and others similarly situated as members of the old Society. A judgment in favor of plaintiff alone for value of his certificate would be less than $3,000.-00 as would also a judgment in favor of plaintiff only for his distributive share in the Society at the time of the alleged unlawful conversion into a stock company."

6. The provision for "Full Participating Dividends" begins with these words: "The Society being organized and carried on solely for the mutual benefit of its members, all of its funds, savings, earnings, and surplus belong to the certificate holders."

the separate contracts between plaintiff and the other members and the Society. Those writings, likewise exhibited with plaintiff's pleadings, made elaborate provision for a fraternal benefit society having a lodge system with representative form of government. Its purposes included the teaching of patriotism and individual responsibility to its members; the raising of funds by voluntary contribution or assessment for use in ministering to the needs of the members; and the promoting of charity and fraternity among the membership.

■■■ The Court below heard together the motion to dismiss for want of jurisdiction and the motions by plaintiff and defendants for summary judgments, in connection with which the Court had before it a number of affidavits, requests for admission and answers thereto, and the depositions of all of the principal parties in interest.[7] A trial court is granted considerable discretion in hearing jurisdictional questions and the procedure followed here was amply within its competence.[8] The conclusion announced by it was this: "The record in this matter is voluminous but all counsel have conceded that there is no material conflict in the facts. * * * After some days of diligent study this Court has reached the conclusion that the action must be dismissed on jurisdictional grounds."

In its well-considered opinion the Court declared that, under any theory advanced by plaintiff, his own certificate of membership did not have a value of $3,000.00 and that he had no standing to maintain his action unless he was entitled to aggregate with his own claim, the claims of all other members of the Society; pointing out that, in the reorganization, the new Company set aside the assets of the Society as a reserve for the payment of benefits under then existing certificates and credited to those certificate-holders all dividends earned upon their certificates.

The Court then quoted the provisions of Rule 23(a) (1), 28 U.S.C.A.,[9] and held that plaintiff did not fairly represent the class he assumed to speak for, and that even if he did the class action he was attempting to maintain was not a true class action but belonged rather to the hybrid or the spurious category.[10]

---

7. That procedure was explained in the Court's written opinion thus: "The Court first heard arguments for a full court day on the motion to dismiss the case on jurisdictional grounds, but concluded that that motion could not be decided without considering the merits of the controversy, for the reason that the question as to whether or not plaintiff's claim, did or did not, exceed $3,000.00 and the question as to whether this were, or were not, a true class action, involved the nature of plaintiff's rights, the rights of other members, and the relationship of such rights to each other. Accordingly, the Court again placed the case upon the calendar for a hearing upon all motions to dismiss, and another full day was devoted to argument on the same."

8. Gibbs v. Buck, 1939, 307 U.S. 66, 71–72, 59 S.Ct. 725, 83 L.Ed. 1111; KVOS, Inc., v. Associated Press, 1936, 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183; McNutt v. G. M. A. C., 1936, 298 U.S. 178, 184, 56 S.Ct. 780, 80 L.Ed. 1135; and Wetmore v. Rymer, 1898, 169 U.S. 115, 120–121, 18 S.Ct. 293, 42 L.Ed. 682.

9. "Rule 23. Class Actions

"(a) Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

"(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it".

10. The Court's analysis of the facts was accompanied by copious references to the authorities. Among those cited in support of its decision are these: Matlaw Corp. v. War Damage Corp., 7 Cir., 1947, 164 F.2d 281, certiorari denied 333 U.S. 863, 68 S.Ct. 744, 92 L.Ed. 1142; Rogers v. Hennepin County, 1916, 239 U.S. 621, 36 S.Ct. 217, 60 L.Ed. 469; Lion Bonding & Surety Co. v. Karatz, 1923, 262 U.S. 77, 43 S.Ct. 480, 67 L.Ed. 871; Clark v. Paul Gray, Inc., 1939, 306 U.S.

We think the facts and the law support both conclusions of the Court below. On the question of adequacy of representation the Court pointed out that, of the 9,000 members of the Society, neither the plaintiff nor any other member objected to the conversion when it was taking place, although ample written notice was admittedly given him along with all other certificate-holders. Plaintiff did not register his disapproval until more than three years after the conversion when this litigation was begun. Every lodge of the Society voted unanimously in favor of the conversion,[11] and nine hundred twenty-four of the members availed themselves of the opportunity given to all members, to subscribe to the capital stock of the new company.

Neither the pleadings nor the proof showed that any other member besides plaintiff was dissatisfied with the new arrangement, and plaintiff did not make any certificate-holders of either class defendants in order to test their attitudes. No certificate-holder has intervened in support of plaintiff's position and, under the authorities cited above, the Court

below was justified in holding that plaintiff did not bring himself within the requirements of Rule 23 concerning adequate representation of the class of which he constituted himself the spokesman. His "allegation that he sued on behalf of others similarly situated [cannot] help him."[12] The question of adequate representation is very important in the true class suit for all of the members of the class are bound by any judgment which may be entered upon the merits.[13] Plaintiff's interest must not, therefore, be antagonistic to, but must be wholly compatible with, those whom he would represent.[14]

Moreover, in order to justify the aggregation with his own of the claims of the other members of the class he purports to represent, plaintiff was required to show that the action he sought to maintain was a "true", not a "hybrid" or "spurious", class action. The attributes of and differences between these classifications are well developed in 3 Moore's Federal Practice, pp. 3434–3457; and the right to aggregate the claims to satisfy the three thousand dollar jurisdictional requirement is exhaustively treat-

583, 59 S.Ct. 744, 83 L.Ed. 1001; Eberhard v. Northwestern Mutual Life Ins. Co., 6 Cir., 1917, 241 F. 353; Robbins v. Western Auto Ins. Co., 7 Cir., 1924, 4 F.2d 249; Woods v. Thompson, 7 Cir., 1926, 14 F.2d 951; Sturgeon v. Great Lake Steel Corp., 6 Cir., 1944, 143 F. 2d 819; Knowles v. War Damage Corp., 1948, 83 U.S.App.D.C. 388, 171 F.2d 15, certiorari denied 336 U.S. 914, 69 S.Ct. 604, 93 L.Ed. 1077; Cherokee Life Ins. Co. v. Davis, 142 Ga. 32, 82 S.E. 445; Hughes v. Encyclopaedia Britannica, 7 Cir., 1952, 199 F.2d 295; 3 Moore's Federal Practice, Par. 23.13, p. 3477 et seq.; Barron & Holtzoff, Vol. 2, Sec. 569, p. 180.

11. Defendants contended and the Court below evidently accepted that plaintiff had never affiliated with any lodge or participated in any fraternal or other activities, confining his participation in the Society to keeping up his payments to protect the insurance benefits of the certificate. In his reply brief, plaintiff cites cases in an effort to sustain his argument that the Court would presume

that he had been initiated into some lodge. But the facts before the Court, including the pleadings and plaintiff's own statements in his deposition, tend to negative such a presumption.

12. Lion Bonding Co. v. Karatz, supra, 262 U.S. at page 86, 43 S.Ct. at page 483; Hansberry v. Lee, 1940, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22.

13. The attitude of the Courts is illustrated in the question asked by the Seventh Circuit in Weeks v. Bareco Oil Co., 7 Cir., 125 F.2d 84, 93, a case cited by both parties: "Now assuming * * * that this is a proper class suit, then those of the class who are not plaintiffs will be bound by the judgment. That being the case, should this court permit the plaintiffs, on the showing before us, to bind the absent plaintiffs of this class, 'for better or worse'?"

14. Lion Bonding Co. v. Karatz, supra, and Supreme Tribe of Ben-Hur v. Cauble, 1921, 255 U.S. 356, 41 S.Ct. 338, 65 L. Ed. 673.

ed in the same volume, pp. 3477–3486. At page 3478 a footnote expresses the rule as applicable to the case before us:

> "In a class action by a policy holder against a mutual insurance company to recover an accumulated surplus fund for plaintiff and other policy holders who contributed to the fund, the claims are not joint but arise from the several policies, and may not be aggregated. Andrews v. Equitable Life Assurance Society of United States, 7 Cir., 1941, 124 F.2d 788 \* \* \* certiorari denied, 1942, 316 U.S. 682 [62 S.Ct. 1270, 86 L.Ed. 1755] \* \* \*." [15]

The Andrews case is quite generally referred to as a basis for later decisions, and it in turn rests heavily upon Eberhard v. Northwestern Mutual Life Ins. Co.,[16] which was cited as authority by the Supreme Court in Lion Bonding & Surety Co. v. Karatz, supra, 262 U.S. at page 86, 43 S.Ct. at page 483. In Andrews, Judge (later, Mr. Justice) Minton analyzed a large number of cases and distilled the rule to be applied:

> "The right of the plaintiff and his alleged class to do so [that is, aggregate his claim with claims of others] will depend upon the nature of their claim against this fund and not the size of the fund. The plaintiff contends that his right is joint with others in the alleged class, and grows out of a relationship that comes from their membership in a mutual company. In our opinion, the rights of the plaintiff and the persons he purports to represent all stem from their policies in the defendant company \* \* \*. Whatever rights a

member of a mutual company has are delineated by the terms of the contract, and come from it alone." 124 F.2d at page 789.

> " \* \* \* Enough has been said to indicate what we think to be the nature of the plaintiff's claim. Since his claim, as we hold, stems from the contract, and that of the persons he purports to represent would likewise, their claims are several. They are not related to or dependent upon each other in any manner, but each arises out of a separate and distinct contract with the defendant." 124 F.2d at page 790.

The same reasoning is followed in Knowles, where it is held that the right to satisfy the three thousand dollar limitation on Federal District Court jurisdiction by defining the sum in controversy as the aggregate of all of the individual claims, as a "clear exception to the general rule that where separate persons join, or are joined as plaintiffs in a federal Court, each must aver, and be prepared to prove, that at least three thousand dollars is involved in his own claim." [17]

Plaintiff makes an earnest and ingenious argument that his is a true class action and that he should be permitted to tack onto his own claim those of the other class members to attain the three thousand dollar limit; or that, in any event, the amount in controversy is the recovery which is sought rather than the value of plaintiff's claim, and he cites many authorities in an effort to sustain his position.[18] A painstaking

15. This note is supplemented in the 1954 Supplement at pp. 121–2 by an extensive treatment of and quotation from Knowles v. War Damage Corp., 1948, 83 U.S.App. D.C. 388, 171 F.2d 15 \* \* \* certiorari denied, 1949, 336 U.S. 914, 69 S.Ct. 604, 93 L.Ed. 1077. That case involved facts much like the ones before us. The Court held that there could be no aggregation because there was no showing that plaintiffs adequately represented the class, and further because the claims

were several, each being dependent upon its own contract of insurance.

16. 6 Cir., 1917, 241 F. 353.

17. These principles are recognized and reiterated in the cases relied upon by the Court below and listed in fn. 10 supra, and no dissent from them is found which would justify the position of appellant here.

18. Chief among these are Gibbs v. Buck, 1939, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed.

reading of these authorities reveals that they do not support plaintiff's contentions under the averments of his pleadings or under those averments as supplemented by the evidence.

Plaintiff based his complaint upon the certificate issued to him by Acme Life Assurance Society in 1940 and asserted that the members of the class he represented held like certificates. These certificates, insofar as they dealt with money or property values, were nothing more than policies of life insurance and each certificate constituted a separate contract with the Society and no certificate-holder had any interest in the contract between any other certificate-holder and the Society. There was no joint or common obligation owed by the Society to the several certificate-holders.

The essence of the relief prayed for was a money judgment against the defendants jointly and severally, including the Company into which the assets of the Society issuing plaintiff's certificate were converted. Incidental to that relief was the prayer that the stock of the thirteen individual defendants, officers and stockholders in the Company, be adjudged to be held by them in constructive trust for the certificate-holding members of the Society; and the prayer for the appointment of a receiver to take over the said stock, and to take the steps necessary to collect the money judgment demanded. The Court below, after affording plaintiff ample opportunity to develop his several theories of recovery which were asserted as justification for the class action, rejected the contentions entirely and decided that plaintiff sought nothing more than a money judgment.[19]

In his reply brief before us plaintiff has sought to escape the inexorable logic of the Court's finding by minimizing the importance of the money demand set forth in his pleadings, and to stress rather the social and fraternal aspects of the Society vouchsafed under the membership certificates.[20] These benefits were not

1111; Sovereign Camp, WOW v. Bolin, 1938, 305 U.S. 66, 59 S.Ct. 35, 83 L.Ed. 45; Pinel v. Pinel, 1916, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817; Shields v. Thomas, 1855, 17 How. 3, 58 U.S. 3, 15 L.Ed. 93; Marion Mortgage Co. v. Edmunds, 5 Cir., 1933, 64 F.2d 248; Grand Rapids Furniture Co. v. Grand Rapids Furniture Co., 7 Cir., 1942, 127 F.2d 245; Boesenberg v. Chicago Title & Trust Co., 7 Cir., 1942, 128 F.2d 245, 141 A.L.R. 565; Johnson v. Ingersoll, 7 Cir., 1933, 63 F.2d 86; Stearns Coal & Lumber Co. v. Van Winkle, 6 Cir., 1915, 221 F. 590; Haynes v. Fraternal Aid Union, D.C.Kan., 1929, 34 F.2d 305; Edgerton v. Armour & Co., D.C.Cal.1950, 94 F.Supp. 549; and 3 Moore's Federal Practice pp. 3445, 3481 and 3486.

19. "This Court by previous order directed plaintiff's counsel to specify what relief they desired, and this was done by an amendment to the complaint. * * * He seeks a money judgment and nothing else, but the money judgment, if elected, would have to be disposed of by distribution among the former members of the old Society. When such distribution were attempted, however, it would appear, as it now appears, that the greater portion of the members had expressly agreed to the reorganization and that a large number of them still hold certificates of insurance. They cannot receive from the individual defendants in this case the value of the reserve behind their certificates of insurance, and at the same time still hold their certificates of insurance in the new company, backed up by the very assets for the conversion of which they obtained their judgments against the defendants. At various times during the oral arguments in this case the Court has brought this situation to the attention of plaintiff's counsel and at no time has received a satisfactory explanation as to what a receiver appointed by this Court would do with a sum exceeding $500,000.00 after paying counsel fees and expenses. It would be inevitable that the Court would be compelled eventually to order this money returned to someone. What is said above merely emphasizes the soundness of the decisions of the Courts in connection with Rule 23 in preventing one member of a class from receiving damages for the benefit of the whole class * * *."

20. Some of the language contained in the reply brief follows: "The claim of the class, being based on membership in the lodge, instead of ownership of an insurance policy, is one claim; * * *. "The question is not what rights the

mentioned in the Amended Complaint and no relief based upon them was sought. Plaintiff's assertion that the equitable remedy he relies upon to secure the amorphous and impalpable benefits of fraternal association and the other ephemeral boons he seeks "needs no statute or court rule to authorize" the application of the rule allowing class suits is quite revealing. It explains the absence of authority tending to sustain such a thesis.

Nor do plaintiff's authorities support his argument that he is permitted, under Rule 23(a) (1) as applied to his facts, to aggregate the values of the claims of the class to raise the amount in controversy to the statutory minimum. A glance at one or two of his authorities will illustrate their inapplicability. The case of Haynes v. Fraternal Aid Union, D.C.Kan. 1929, 34 F.2d 305, is discussed at a half dozen points in plaintiff's initial brief, and is relied upon as being the one nearest in point. It is argued that our espousal of the Haynes holding in Marion Mortgage Co. v. Edmunds, supra, aligns this Court with the argument which lies at the base of plaintiff's claim to jurisdiction.

The trouble with that argument is that Haynes was a derivative suit. He was seeking to recover what he claimed the defendants owed his society. That case is cited in a note in 30 A.L.R.2d 728 and 729 for the proposition: "In suits by corporate stockholders to enjoin corporate acts injurious to the corporation, the criterion of jurisdictional amount is the value of the right of the corporation sought to be protected and not the value of plaintiff's stock."

Marion Mortgage was also a derivative action. It involved a prayer for receivership of ten corporations and one individual in connection with alleged violation of trusts. Here is what we said about the jurisdictional question there [64 F.2d 252]: "It is alleged in the bill that each of the four complainants owns in his own right and as the original purchaser more than $3,000 of bonds or beneficial certificates under several of the trusts * * *. But these interests do not fix the amount in controversy, for this bill is not a suit to recover on the bonds and certificates. There is no prayer for such a judgment, but only for a recovery *by each trust of what has been taken from it, to be returned to the several trustees who are parties.* It is like a stockholders' bill to enforce a corporate right which the corporate officers refuse to assert. The amount in controversy is the corporate right and not the stockholder's interest in the corporation * * *." [Emphasis added.]

But plaintiff specifically disavows relying upon the portions of Rule 23 providing for derivative actions.[21] We fail to find in any authority cited by plaintiff or in the facts alleged or proved by him, any warrant for aggregating the

---

policy holders, as such, had, but what rights did the members of the lodge have by virtue of being members of the lodge * * *.

"Equity long since recognized the inadequacy of law courts to deal with situations like that. For that reason it permits a representative action which virtually ignores the various claimants until a decree has been obtained and then holds open the decree to permit the claimants, upon solicitation under court auspices, to participate in the benefits of a decree. * * *

"A class suit in which the decree can be held open to permit all absentees, upon notice and solicitation, to come in and participate in the benefits of the litigation, is by far the most practical and efficient remedy available. It is peculiarly an equitable remedy and *needs no statute or court rule* to authorize its application to a given state of facts." [Emphasis added.]

21. He stated in his reply brief: "* * * we have never claimed that this is a derivative action. We have endeavored to make it perfectly clear in this case that the plaintiff, as a member of the class, is suing on behalf of the class— not the corporation—to have determined the rights of the class to certain assets. * * * We expressly and intentionally brought this case within Rule 23(a) (1) and avoided any averment that would put it within Rule 23(a) (2) or 23(a) (3)."

298

claims of the members of the class with those of plaintiff so as to bring him within the purview of Rule 23(a) (1). This being so, and it being admitted that plaintiff's claim is not of the sum or value of three thousand dollars, the Court below was without jurisdiction and correctly dismissed plaintiff's action without prejudice.

Affirmed.