**Thomas J. CASHMAN et al., on behalf of themselves and all other retired members of the police force of the Port of New York Authority, similarly situated, Plaintiffs,**

v.

**PORT OF NEW YORK AUTHORITY, Defendant.**

**No. 67 Civ. 985.**

United States District Court,
S. D. New York.

Sept. 2, 1970.

Harvey & Harvey, Albany, N. Y., for plaintiffs; Arthur J. Harvey, Albany, N. Y., of counsel.

Sidney Goldstein, New York City, for defendant; John F. Duffy, New York City, of counsel.

## OPINION

LASKER, District Judge.

Plaintiffs bring this action "on behalf of themselves and all other retired members of the police force of the Port of New York Authority similarly situated." Two motions have been brought. Plaintiffs move for an order declaring this a class action, and defendant moves to dismiss on the following grounds: (a) that the court lacks jurisdiction because no plaintiff has or could incur damages in excess of $10,000, and plaintiffs together cannot aggregate their damages to attain the jurisdictional prerequisitie of $10,000 damages required by 28 U.S.C. § 1332; (b) diversity of citizenship does not exist because plaintiffs' attorney represents with the same general authority 151 claimants [1] who are citizens of either New York or New Jersey, in both of which states defendant is incorporated, Ch. 154, Laws of N.Y.1921, Ch. 151, Laws of New Jersey 1921, and of both of which states defendant is therefore also a citizen within the meaning of 28 U.S. C. § 1332(c); (c) complete diversity is absent for the additional reason that one of the named plaintiffs was a resident and citizen of New Jersey at the time this action was commenced; and (d) there is no subject matter jurisdiction of this action because the New York and New Jersey statutes permitting suits against defendant do not extend to this action, since it is based upon a contract entered into prior to the effective date of the statutes.

Plaintiffs claim that defendant has breached a contract whereby it promised to pay all Port Authority police officers a pension equal to one-half of their aver-

---

1. Ch. 301, Laws of N.Y.1950, and Ch. 204, Laws of N.J.1951, require the attorney for plaintiffs suing the Port Authority to file a "Notice of Claim." The named plaintiffs here (who now number 14, two of the original 16 having died since the action was commenced) are represented by the same attorney, who has in addition served Notices of Claim upon defendant for 151 other policemen * * * all of whom reside in either New York or New Jersey, and who are not named in the complaint in order to avoid problems of diversity of jurisdiction.

age annual salary for the five consecutive years in which their earnings were the highest, provided at least 500 members of the police force elected to join the 25 year retirement plan of the New York State Employees' Retirement System. Plaintiffs allege that their pension benefits fall short of the one-half figure, and demand an aggregate judgment of $300,000. While plaintiffs do not explicitly advert to their own retirement allowance records, and do not explicitly seek the individual recovery to which they are allegedly entitled, the real relief they seek, as the defendant's memorandum points out, is the difference between the annual retirement benefits they have received and one-half of their final average salary, multiplied by the number of years since their retirement. That the complaint refers to their collective rather than individual damages does not affect my decision as to the jurisdictional amount prerequisite; as the court in Berman v. Narragansett Racing Association, 414 F.2d 311, 315, n. 11 (1st Cir. 1969), observed, "the manner of framing the complaint does not entitle plaintiffs to aggregate their claims where for other reasons it is clear that their interests are separate and distinct."

I find that none of the plaintiffs has established that the matter in controversy as to him exceeds the sum or value of $10,000, that the plaintiffs cannot aggregate their individual claims in order to satisfy the $10,000 jurisdictional requirement in actions, such as this one, founded upon diversity of jurisdiction, and that accordingly the complaint must be dismissed.[2]

## I. FACTS

Plaintiffs were all employed as police officers by defendant, which is a bi-state agency created by compact between New York and New Jersey in 1921. In 1946 defendant entered into a commitment to its police officers that if they would elect to become members of the 25 year retirement plan of the New York State Employees' Retirement System, upon retirement they would receive a pension allowance equal to one-half of their average annual salary for the five consecutive years of their peak earnings. It was financially advantageous for plaintiffs to join the 25 year plan, but membership in it required participating individuals to make substantial additional contributions to the Retirement System. However, these contributions could be reduced if the employer elected to assume part or all of the additional costs. In a resolution adopted on December 12, 1946, the Port Authority agreed to pay the entire additional cost attributable to police service rendered prior to the effective date of the resolution, and further agreed to pay one-half of the additional cost resulting from police service rendered by each officer after the effective date.

The 25 year plan, like other plans previously made available to the officers, provides for contributions to the State Retirement System both by the individual member and by the employer. Each member contributes to the annuity savings fund, which consists of separate accounts for each individual. The Retirement System annually furnishes a statement of each such account to every member. This annuity portion of the 25 year plan is the actuarial equivalent of the contributions made by each member, plus accumulated interest. The contributions of each member are a fixed percentage of salary. For the policemen, the rate was computed by the Retirement System so as to produce an expected annuity which, together with the pension provided by employer contributions, would produce a basic retirement allowance equal to one-half final average salary after 25 years. The rate depends upon each person's age and length of

2. Because I find that the court lacks jurisdiction under 28 U.S.C. § 1332, there is no need to discuss the other grounds upon which defendant moves to dismiss, and I have not done so. Nor do I discuss the propriety of declaring this a class action, because the action itself must be dismissed.

service. Each of the named plaintiffs had a different rate of contribution fixed at the time of his entry into the plan.

As stated above, in addition to the individual contributions to the annuity portion of the retirement fund, the employer makes contributions—but they go to a separately maintained pension portion of the fund. Employers' contributions are computed according to the New York Retirement and Social Security Law. According to the affidavit of Max Weinstein, who was formerly Chief Actuary of the Retirement System, the pension portion of each plaintiff's retirement allowance was fully funded by the Port Authority and in each case equalled the proportion of final average salary which it was expected to provide. However, the basic retirement allowance for certain of these plaintiffs[3] has not equalled "half-pay" because their own contributions were not sufficient to provide an annuity in the expected proportion of final average salary. In other words, a deficiency exists as to the annuity portion of their retirement allowance. The deficiency is attributable to an unexpected increase in their salaries, which was not accompanied by a commensurate increase in their contribution rates. It is this deficiency that accounts for the difference between the actual retirement allowances received by some of these plaintiffs and the one-half of final average salary which they expected, and which they seek to recover in this action.

As I will explain *infra*, the entire class of plaintiffs cannot aggregate their claims if their individual pension fund records reflect differences among themselves. In this regard, it is important to note that the plaintiffs have varying factual backgrounds and rights insofar as their retirement allowances are concerned. Some chose certain options not elected by others. Some took a loan against their accumulated annuity contributions, and thereby caused a reduction in the annuity portion of their retirement allowance, while others did not borrow on their contributions. Some have a deficiency and others do not. Some retired after twenty-five years and others retired before then. Most important, of those who do suffer from a deficiency in their annual retirement allowances, the past deficiencies vary in amount from $173 to $2,320. No named plaintiff has either a past deficiency or an actuarially-computed future total lifetime deficiency exceeding $10,000.

## II. JURISDICTIONAL AMOUNT

28 U.S.C. § 1332 requires a plaintiff whose claim of jurisdiction is predicated upon diversity of citizenship to show that the matter in controversy exceeds $10,-000. As stated in Thomson v. Gaskill, 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942):

> "The policy of the statute conferring diversity jurisdiction upon the district courts calls for its strict construction. Healy v. Ratta, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248; and see Town of Elgin v. Marshall, 106 U.S. 578, 580, 1 S.Ct. 484, 486, 27 L.Ed. 249. Accordingly, if a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 188–189, 56 S.Ct. 780, 784, 785, 80 L.Ed. 1135; * * * The bill must be dismissed if the evidence in the record does not support the allegations as to jurisdictional amount." (Certain citations omitted.)

---

3. According to Mr. Weinstein's affidavit, which is not contested, seven of the 14 surviving named plaintiffs have no deficiency in their basic retirement allowances because their annual allowance is either equal to, or more than, one-half final average salary. Weinstein Affidavit, para. 7, p. 6. That half of the named plaintiffs do not even qualify for the alleged class on whose behalf the action is brought demonstrates such differences among these plaintiffs as to preclude them from contending that they assert a joint and common claim. See *infra*.

Here, there is no question as to the inadequacy of the amount in controversy insofar as each individual plaintiff is concerned. The only issue is whether these plaintiffs can aggregate their alleged damages so as to meet the $10,000 minimum required by § 1332. The starting point for any discussion of aggregation of claims must be Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). In *Snyder*, the Supreme Court held that various claimants may not add together separate and distinct claims in order to provide the requisite $10,000 jurisdictional amount. The Court squarely considered and flatly rejected the proposition that the 1966 amendment to Rule 23 of the Federal Rules of Civil Procedure allowed aggregation of such claims. Instead, it reaffirmed the traditional rule of Pinel v. Pinel, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817 (1916), and Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939), that two or more plaintiffs may aggregate their claims only if they seek "to enforce a single title or right in which they have a common and undivided interest." 394 U.S., at 335, 89 S.Ct. at 1056. The Court noted that it may be difficult to determine which claims are "separate and distinct" and which are common and undivided, and further noted that the inability of parties to combine numerous small claims may preclude some important questions from being litigated in federal courts. 394 U.S. at 338, 89 S.Ct. 1053. However, it concluded that these considerations are outweighed by the congressional purposes reflected in the continous reaffirmation of the jurisdictional amount statute and in Rule 82, F.R. Civ.Proc.—viz., to relieve the federal courts of unmanageable caseloads and to allow due regard for the independence and adequacy of state tribunals. 394 U. S. at 340, 89 S.Ct. 1053.

Snyder v. Harris requires me to determine whether the plaintiffs' claims here are joint and common, or separate and distinct. I find that they are separate and distinct according to other decisions which have applied this dichotomous standard in deciding whether to allow aggregation.

In Hughes v. Encyclopaedia Britannica, 199 F.2d 295 (7th Cir. 1952) a group of fellow employees sued their former employer for rights allegedly due to them under a pension plan. The claims of the individual plaintiffs fell short of the jurisdictional amount, and the court refused to allow them to be aggregated. It noted, inter alia, that (a) each individual could have brought his own separate state court action for breach of contract; (b) each employee was issued an individual participation certificate in the retirement insurance plan to which plaintiffs sought to have defendant make payments; (c) the amount of retirement income purchased for each employee was computed according to his particular age, earnings, and length of service with defendant; and (d) a separate individual account was kept for each employee. As indicated above, all of these factors are present in this case.

In Sturgeon v. Great Lakes Steel Corp., 143 F.2d 819 (6th Cir. 1944), a group of employees covered by a group insurance plan sued the employer to compel it to set up a fund from which the accrued insurance dividends would be distributed to the employees. The court observed that any amount owed to any plaintiff depended upon his individual insurance policy, and that the separate and distinct contract of each employee precluded all of them from aggregating their claims for jurisdictional purposes. The court went on to distinguish Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111 (1939), a case on which plaintiffs rely here, by pointing out that in *Gibbs* the Supreme Court concluded that the plaintiffs had an undivided interest because they were attacking a Florida statute that, if upheld, would have destroyed their association's contracts with others. If the contracts were nullified, for each plaintiff to comply with Florida law as to copyright licensing would have cost more than the then-jurisdictional requisite.

The Supreme Court itself has commented upon the distinction between sep-

arate/distinct and common/undivided claims in Thomson v. Gaskill, *supra*, 315 U.S. at 447, 62 S.Ct. at 675, where it stated:

> "Aggregation of plaintiffs' claims cannot be made merely because the claims are derived from a single instrument,[4] * * * or because the plaintiffs have a community of interest * * * In a diversity litigation the value of the 'matter in controversy' is measured not by the monetary result of determining the principle involved, but by its pecuniary consequence to those involved in the litigation." (Citations omitted.)

A recent decision applying the separate/distinct-common/undivided test of Snyder v. Harris, *supra*, is Berman v. Narragansett Racing Association, 414 F. 2d 311, 315–316 (1st Cir. 1969). There the court did allow aggregation because it found that the interest of the group of plaintiff-pursewinners who sought to compel the defendant racetracks and owners to distribute the purses was common and undivided. However, the court noted:

> "No contractual rights are created between the defendants and individual pursewinners, and plaintiffs make no specific claims for individual payment * * *
>
> "Under any formula that is finally adopted, defendants' liability is the same * * * Demonstrably, the instant case is not a collection of individual lawsuits brought solely for the convenience of the claimants."

In addition to Gibbs v. Buck, *supra*, plaintiffs cite Troup v. McCart, 238 F.2d 289 (5th Cir. 1957), for the proposition that their claims are common and un-

divided, and therefore aggregable. However, in *Troup* the plaintiff-life insurance society members were *not* allowed to aggregate their claims because the court found that the life insurance society did not owe them a joint or common obligation. Indeed, the court quoted extensively from Andrews v. Equitable Life Assurance Society of the United States, 124 F.2d 788, 789–790 (7th Cir.), cert. den. 316 U.S. 682, 62 S.Ct. 1270, 86 L.Ed. 1755 (1942), including the following passage:

> "The right of the plaintiff and his alleged class to do so [that is, aggregate his claim with claims of others] will depend upon the nature of their claim against this fund and not the size of the fund * * * the rights of the plaintiff and the persons he purports to represent all stem from their policies in the defendant company * * *
>
> "* * * Since [the plaintiff's] claim, as we hold, stems from the contract, and that of the persons he purports to represent would likewise, their claims are several."

Although it is true that here the plaintiffs have sued the Port Authority and not the State Retirement Fund, it is clear from the foregoing authorities that they are actually asserting their separate claims against the operation of the fund. To cite and summarize additional decisions that delineate the firmly established rule barring aggregation in these circumstances would be to engage in legal overkill.[5] The action must be dismissed because the court lacks jurisdiction, plaintiffs having failed to establish that the matter in controversy exceeds $10,000.

It is so ordered.

---

4. Here, while the plaintiffs sue upon the Port Authority Resolution of December 12, 1946, there are separate instruments involved insofar as the annuity portions of each plaintiff's retirement allowance is concerned.

5. It should be noted, however, that this Circuit applied the rule that separate claims cannot be aggregated, Arnold v. Troccoli, 344 F.2d 842, 843, n. 1, and cases cited therein (2d Cir. 1965), even prior to the ruling of the Supreme Court in Snyder v. Harris, *supra*.