**George and Kathryn SCHMIDT, Plaintiffs,**

v.

**INTERSTATE FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant.**

Civ. A. No. 75–1197.

United States District Court, District of Columbia.

April 12, 1977.

Benny L. Kass, Benny Kass & Associates, Washington, D. C., David S. Goldberg, Rockville, Md., for plaintiffs.

Bernard I. Nordlinger, King & Nordlinger, Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

SIRICA, District Judge.

This is a yet uncertified class action seeking declaratory, injunctive and monetary relief. The dispute grows out of a business practice carried on by Interstate Federal Savings & Loan Association (Interstate), a lender, by which borrowers were charged prepayment penalties and interest charges for the privilege of prepaying the mortgage loans that they had taken out from Interstate. Plaintiffs claim that this practice violates applicable federal regulations, is in breach of contract and constitutes unjust enrichment. The case is presently here on plaintiffs' motion to certify the action on a class basis under F.R.Civ.P. 23(b)(3).

### I. BACKGROUND FACTS

The particulars of the controversy are fully set out in an earlier Memorandum Opinion dated November 1, 1976. *Schmidt v. Interstate Federal Savings & Loan Association,* 421 F.Supp. 1016 (D.D.C.1976). Suffice it to say here that Interstate is a savings and loan institution organized under the Home Owners' Loan Act of 1933 [1] and regulated by the Federal Home Loan Bank Board (FHLBB) through FHLBB rules and regulations.[2] As a lending institution, Interstate is engaged in the business of making loans for the purchase of homes in the District of Columbia, suburban Maryland and Virginia.

On June 28, 1972, George and Kathryn Schmidt took out a loan from Interstate for the purchase of a home in Maryland. The loan documents set the term of the loan at

---

1. 12 U.S.C. § 1461 *et seq.* (1970).

2. These rules and regulations became binding on Interstate on April 1, 1975 when Interstate incorporated as a federal savings and loan institution. The significance of this lies in the definition of a class under F.R.Civ.P. 23(b)(3) since plaintiffs, who are seeking class relief, have alleged a violation of applicable FHLBB regulations.

30 years. The loan documents also provided for the prepayment of the debt, but did not provide for the payment of prepayment penalties in the event the Schmidts sought to pay off the loan obligation before maturity. On April 11, 1975, the Schmidts prepaid their loan from Interstate and, as a condition for doing so, were required to pay sums attributable to their decision to pay off the loan before the date of maturity. These charges, consisting of a prepayment penalty and an amount of advance and unearned interest, were paid under protest and formed the basis of the present lawsuit.

In the earlier ruling in this case, these charges were found to be in violation of 12 C.F.R. 545.6–12(b), the FHLBB regulation that prohibits lenders under FHLBB control from charging prepayment penalties except where such charges are expressly provided for in the loan agreement.[3] This ruling, rendered in the context of Interstate's motion for partial summary judgment, settled many of the legal issues involved in the claim for violation of the FHLBB regulation, and paved the way for the Schmidts to file their own motion for partial summary judgment. But before doing so, the Schmidts moved to certify the case as a class action.

## II. CLASS CERTIFICATION

A. *Unique circumstances do not prevent the certification of this case as a class action.*

The Schmidts seek to represent the class of "All persons who, since July 4, 1968, prepaid obligations to Interstate secured by deeds of trust on their residences, and who were required to pay a prepayment penalty [and/or] interest on the amount of final payment through the end of the month as final payment." [4] In opposition, Interstate argues that unique circumstances peculiar to the Schmidts disqualify them from serving as class representatives of any class of Interstate borrowers.[5] The thrust of this argument is that only the Schmidts, unlike any other borrower who prepaid a loan from Interstate, lodged a protest when called upon to pay prepayment penalties in order to retire their debt to Interstate. This argument however is falsely premised.

### 1. *the federal claim*

■ With regard to the claim for violation of 12 C.F.R. 545.6–12(b), the FHLBB regulation on which the Schmidts base their federal claim, this argument rests on the assumption that protest is a necessary condition to recovery. But nowhere in 12 C.F.R. 545.6–12(b) is there specified a requirement that the recovery of unlawful prepayment charges depends upon whether the borrower first lodges a protest against the imposition of such charges. Instead, the regulation is silent on the issue.

This silence leads the Court to consider whether a protest requirement ought to be imported into the regulation as a matter of federal common law. The short answer to

---

3. 12 C.F.R. 545.6–12(b) reads in relevant part:
 Each borrower from Federal associations on a loan secured by a home . . . shall have the right to prepay the loan *without penalty* unless the loan contract makes *express provision* for a prepayment penalty. (emphasis supplied)

4. The Schmidts have divided the asserted class into two subclasses, consisting of those borrowers who prepaid loans from Interstate and were charged a prepayment penalty and those who prepaid their loans and were charged advance interest. The apparent reason for this is that some borrowers were required to pay only one of these charges, while others, including the Schmidts, were required to pay both.

5. The consideration of differences between class representatives and class members is required under the provisions of F.R.Civ.P. 23(a)(2), (b)(3). It does not appear however that Interstate is asserting the difference between the Schmidts and class members to show that rule 23 requirements have not been satisfied. Rather, it appears that Interstate is using the difference to show that no borrowers other than the Schmidts have a cause of action against Interstate. In either event, this argument fails since the Court is convinced that whatever dissimilarity there may be between the Schmidts and other borrowers, it is not material to the claims alleged.

this question is negative, since conditioning the recovery of charges prohibited by 545.-6–12(b) on whether a protest is made flies in the face of the protection conferred on borrowers by the regulation. 545.6–12(b) protects borrowers on home loans against the *undisclosed* imposition of prepayment charges. To expect borrowers to level protests concerning charges that are *not* disclosed to them is unrealistic. Moreover, reading a protest requirement into the regulation will likely result in a situation where, as here, the vast majority of borrowers will pay the relatively insignificant prepayment charges in the mistaken belief that the charges are part and parcel of the prepayment process. This eventuality would roundly defeat the protection intended by 545.6–12(b) for the benefit of home borrowers.

#### 2. the common law claims

■ With regard to the common law claims of breach of contract and unjust enrichment, Interstate's argument similarly rests on the false premise that protest is a condition to recovery. A studied review of the relevant case law fails to disclose any support for the proposition advanced by Interstate that payments not made under protest cannot later be recovered in an action for breach of contract or unjust enrichment. None of the cases cited by Interstate is to the contrary.

*Heckman & Co. v. I. S. Dawes & Son Co., Inc.,* 56 U.S.App.D.C. 213, 12 F.2d 154 (1926) involved a suit to recover back a payment made under circumstances where, unlike here, both parties to the transaction were fully aware of their contractual rights and obligations relative to the challenged payment. To the same effect is *Voulgaris v. Press,* 116 A.2d 691 (D.C.Mun.App.1955). In that case, the recovery of rental payments under a commercial lease was denied on the grounds, not applicable here, that the tenants acted with "full knowledge" of their rights and duties under the lease

agreement. *Id.* 116 A.2d at 692. *Hammond v. Hammond,* 76 U.S.App.D.C. 357, 131 F.2d 351 (1942) involved the application of New York rather than District of Columbia law and, for that reason, is inapposite.

■ It may be that what Interstate is actually claiming is waiver.[6] If that is the case, then the absence of protest by Interstate borrowers required to pay prepayment charges merits examination under the doctrine of waiver since contractual rights may be waived by the conduct of the parties. But waiver requires a showing of a voluntary relinquishment of a known right and, for all that Interstate has offered here, such was simply not the case. Rather, what appears is that the Interstate borrowers who paid prepayment penalties did so not in relinquishment of their rights, but rather in ignorance of them.

#### 3. conclusion

■ Against this background, the Court is of the view that, even though the Schmidts may have been the only borrowers who protested the payment of prepayment penalties, that fact alone does not prevent them from serving as representative parties in a class action. The dissimilarity between the Schmidts and potential class members in this regard is simply not a material barrier to entertaining the Schmidts' claims on a class basis.

#### B. The class of persons on whose behalf the Schmidts seek to proceed is overbroad.

The Schmidts seek to represent a class that is defined to include all persons who, since July 4, 1968, prepaid mortgage loans they had taken out from Interstate and who were charged either or both a penalty fee and advance interest for the privilege of prepaying their loan. As defined, this class sweeps in persons who terminated their loans from Interstate as long ago as 7 years from the date suit was filed. It also includes borrowers whose mortgaged proper-

---

**6.** Insofar as Interstate relies, in this connection, on *G. & R. Corp. v. American Security & Trust Co.,* 173 U.S.App.D.C. 215, 224, 523 F.2d 1164, 1172–73 (1975), waiver appears to be the argument that is being advanced.

ties were located in the District of Columbia, Maryland and Virginia. In the Court's view, both the date of prepayment and the location of the mortgaged properties affect how the class should be defined.

### 1. *the applicable statute of limitations*

■ It is axiomatic that no class action may proceed on behalf of class members whose claims are barred by the applicable statute of limitations. If F.R.Civ.P. 23 were otherwise, it would give the class action method of litigation the ability to revive stale claims that could not otherwise be brought on an individual basis. Viewed in this light, the applicable statute of limitations marks the outer boundary for class membership.

■ The statute of limitations that governs here is three years. With regard to the pendent common law claims for breach of contract and unjust enrichment, 12 D.C. Code § 301(7), (8)[7] provides the limitations period. See 2 Moore, Federal Practice ¶ 3.07[2]. With regard to the federal claim for violation of the FHLBB regulation, 12 D.C.Code § 301(7), (8) also provides the limitations period. The reason for this reference to local law in connection with a federally-created claim is that the FHLBB regulation is silent on the question of limitations and this silence may be "interpreted to mean that it is federal policy to adopt the local law of limitation." *Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743, 746 (1946).

■ Having determined that all of the claims advanced by the Schmidts are subject to a three-year statute of limitations, it would seem that class membership should be defined to include all borrowers who paid Interstate prepayment penalties after July 24, 1972, the date that preceded the filing of suit by the three year period of limitations. But there is another critical

date involved in this case that affects class membership. This is April 1, 1975. On April 1, 1975, Interstate incorporated as a federal savings and loan institution and, having done so, *then* became subject to FHLBB rules and regulations. Prior to this date, Interstate operated as a building association under the laws of the District of Columbia and was not subject to the provisions of 12 C.F.R. 545.6–12(b), limiting prepayment penalties. It follows from this that no borrower who prepaid his mortgage loan from Interstate before April 1, 1975 can be included in a class of persons claiming a violation of that regulation.

### 2. *location of the mortgaged properties*

■ The relevance of the location of the mortgaged properties to class certification is based on choice of law considerations. As a federal court hearing pendent local law claims, this Court, sitting as it does in the District of Columbia, is obligated to apply District of Columbia choice of law principles. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Applying these principles here, the substantive law applicable to the common law claims—or, at least, to some of the issues raised by those claims—is the law of the District of Columbia, Maryland and Virginia depending on the location of the properties on which Interstate extended credit to the borrowers in question. The reason for this is that the location of the mortgaged properties is the single most significant consideration involved in some of the issues underlying the claims for breach of the mortgage agreement and unjust enrichment. This is especially the case where, as here, the District of Columbia, Maryland and Virginia have each enacted provisions governing the prepayment of mortgages on property located in their respective jurisdictions. See 20 D.C.Register § 201 (1974); art. 49 Annot.Code Md.

---

7. 12 D.C.Code § 301 provides in relevant part:
 Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:

 \* \* \* \* \* \*
 (7) on a simple contract, express or implied
 —3 years;
 (8) for which a limitation is not otherwise specially prescribed—3 years.
 \* \* \* \* \* \*

§ 1(b)(2) (1972); §§ 6.1–330.27–.31 Va.Code (1976 Supp).

 It follows that, if the Court were to permit this suit to proceed on behalf of Interstate borrowers whose mortgaged homes were located in the District of Columbia, Maryland and Virginia, it would likely be necessary to apply three separate and possibly inconsistent bodies of law to the breach of contract and unjust enrichment claims. This eventuality would undoubtedly complicate the proceedings and heighten the unmanageability that already inheres in class suits. Accordingly, the Court finds that presentation of the common law claims on a class basis would raise questions of law that are neither common nor predominant throughout the class and, for this reason, certification must be denied. F.R.Civ.P. 23(a)(2), (b)(3).

### III. CONCLUSION

 In light of the foregoing, the appropriate class for certification should be limited to those borrowers who paid prepayment penalties to Interstate on or after April 1, 1975, and who, therefore, have a claim against Interstate for violation of the applicable FHLBB regulation.[8] Thus limited, this action should proceed to conclusion swiftly and without any of the burdensome legal complications that would otherwise attend it. An order in accordance with the foregoing will be issued of even date herewith.

### IV. ORDER

Consistent with the Memorandum Opinion herein, this matter having come before the Court on the motion of plaintiffs for class determination, it is this 12th day of April, 1977,

ORDERED that the above-captioned case be, and the same hereby is, certified as a class action with the class of plaintiffs determined as follows:

(A) All persons who, since April 1, 1975, prepaid obligations to Interstate secured by deeds of trust on their residences, and who were required by Interstate to pay a prepayment penalty; and/or

(B) All persons who, since April 1, 1975, made final payment to Interstate of obligations secured by deeds of trust on their residences on a date other than the first day of the month, and were charged interest on the amount of final payment through the end of the month of final payment; and it is

FURTHER ORDERED that members of the class so defined shall be notified individually by regular mail not later than 30 days from the date defendant provides a list of borrowers who may be members of the class; and it is

FURTHER ORDERED that said notices shall consist of the "Notice[s] of Pendency of Class Action" proposed by counsel for the plaintiffs, but with the following exception: the date April 1, 1975 shall be substituted for the date July 4, 1968 wherever it appears therein; and it is

FURTHER ORDERED that not later than 15 days from the date of this Order counsel for the plaintiffs shall furnish the Court with a Notice containing the exceptions specified above.

---

8. This class will number approximately 100 borrowers and complies with all requirements necessary for certification as a rule 23(b)(3) class action.