Paul INDIANER, on behalf of himself
and all others similarly
situated, Plaintiff,

v.

FRANKLIN LIFE INSURANCE
COMPANY, Defendant.

No. 83–2187–CIV.

United States District Court,
S.D. Florida.

Dec. 23, 1986.

**596**

Elizabeth Clarke, Daniels & Hicks, Miami, Fla., Duane Anderson, Anderson, Moss, Russo, Gievers & Cohen, P.A., Miami, Fla., for plaintiff.

Joseph Jennings, Kimbrall & Hamann, P.A., Miami, Fla., for defendant.

MARCUS, District Judge.

THIS CAUSE has come before the Court upon Plaintiff's Motion for Class Action Determination Under the Second Amended Complaint. Plaintiff Paul Indianer has moved this Court for nationwide class certification under Rule 23 of the Federal Rules of Civil Procedure. Plaintiff asserts that this proposed nationwide class action satisfies the numerosity, commonality, typicality, and adequate representation prerequisites to class action certification under 23(a) of the Federal Rules of Civil Procedure. Additionally, Plaintiff maintains that the class action may properly be certified under either 23(b)(1), (b)(2), or (b)(3).[1]

We need not reach any of Plaintiff's 23(b) claims, however, because we find that we are without subject matter jurisdiction over the proposed nationwide suit. The jurisdictional problem in this case involves satisfaction of the amount in controversy requirement. Simply put, we find that none of the plaintiffs in the proposed *nationwide* class have suffered damages in excess of $10,000. Moreover, Plaintiffs' claims are separate and distinct and may not be aggregated. We also find that an impact upon the defendant is not a proper consideration in determining the jurisdictional amount in a diversity class action where the claims are demonstrably separate and distinct. Finally, even if impact upon the defendant of injunctive relief were a proper consideration in this case, we still would not have subject matter jurisdiction over the proposed suit. Unfortunately, Plaintiff's claims for injunctive relief turn out to be governed by disparate bodies of law. Since these questions are therefore not common within the meaning of Rule 23(a), they are not proper for class action treatment. Only the issue involved in one damage claim is truly common. It would probably be certifiable, but for the fact that no class member's damages can satisfy the $10,000 jurisdictional amount. Thus, we are without jurisdiction to entertain the only truly common claim—the damage claim.

In sum, this Court is without subject matter jurisdiction over those common portions of the case which would otherwise be appropriate for nationwide class treatment, and we may not treat on a nationwide class basis those disparate questions for whose determination subject matter jurisdiction at least arguably exists. An inquiry concerning the presence or absence of subject matter jurisdiction is usually made by the Court before examining the merits of a plaintiff's claims. The instant case is atypical, however, for it is only by addressing

---

1. Although Plaintiff originally moved this Court for certification under all subsections of Rule 23(b), Plaintiff dropped the 23(b)(3) claim in his Reply on Nationwide Class Certification.

the merits of Plaintiff's claims for commonality that the complete absence of subject matter jurisdiction over the nationwide class suit becomes manifest. Accordingly, and for the reasons set out at length below, Plaintiff's Motion for Class Action Determination Under the Second Amended Complaint must be and is DENIED.

## I. BACKGROUND

Plaintiff Indianer is the holder of two Franklin Life insurance policies which allow the holder to obtain loans against them. There are individuals holding identical Franklin Life policies in all fifty states. In addition to allowing policy holders to borrow against their policies, Franklin Life distributes dividends from its cash flow according to a formula which it sets each year. Thus its insurance policies are properly denominated "participating" policies. In or about October 1980, Franklin Life adopted a new dividend allocation formula whereby it drew a distinction between borrowing policyholders and non-borrowing policyholders. This new formula resulted in payment of lesser dividends to borrowing policyholders than to non-borrowing policyholders. Since Plaintiff Indianer had borrowed against both of his policies, he received lesser dividends than non-borrowers under the new formula.

Indianer originally filed suit in state court alleging that Franklin's practice of paying lesser dividends to borrowing policyholders than to non-borrowing policyholders is wrongful. Once the Defendant had removed the action to federal court alleging jurisdiction under 28 U.S.C. § 1441, Plaintiff amended his complaint and sought class certification under Rule 23 of the Federal Rules of Civil Procedure, on behalf of all Florida residents holding participating policies issued by Franklin who had obtained loans on them. The Honorable James Lawrence King, United States District Court for the Southern District of Florida, before whom this cause was originally pending, granted class certification under Rule 23(b)(1), (b)(2) and (b)(3).

Once the state-wide class was certified under the Amended Complaint and discovery showed identity of the pertinent parts of Franklin's participating policies and of the "divisible surplus" distribution formula nationwide, Plaintiff amended his complaint a second time to make the allegations necessary to bring suit on behalf of *all* Franklin participating policyholders throughout the nation having loans on their policies. Count I of the Second Amended Complaint is for breach of fiduciary duty. Plaintiff alleges that the allocation and distribution of the "annual fund" in a discriminatory manner is a breach of Defendant's fiduciary duty to borrowing policyholders. Count II of the Second Amended Complaint is for breach of contract. Plaintiff alleges that Defendant has breached the insurance contract *first*, by charging loan interest in excess of the contractually stipulated rate (i.e., by charging borrowing policyholders the stipulated interest rate *plus* the amount by which their dividends are reduced), and *second*, by breaching statutory provisions of the fifty states which have been incorporated into the insurance contracts and which prohibit unfair discrimination in payment of dividends. Count III of the Second Amended Complaint alleges that Defendant converted sums belonging to Plaintiff and class members by intentionally and wrongfully withholding from Plaintiff and class members the amounts by which their dividends were reduced.

Plaintiff seeks damages on all counts, declaratory relief and an accounting on Counts I and II, and injunctive relief on Count I and the second claim under Count II. Plaintiff specifically seeks injunctive relief requiring Defendant (1) to discharge its fiduciary duty to Plaintiff and class members by allocating and distributing the annual fund in a non-discriminatory manner and (2) to cease its practice of distributing its annual fund in a discriminatory manner thereby paying lesser dividends and/or surplus interest to borrowing policyholders than to non-borrowing policyholders.

Defendant filed a motion to dismiss the Second Amended Complaint. Judge King denied Defendant's motion and ordered Defendant to file an Answer to the Second Amended Complaint. After the Answer was filed, Plaintiff filed the instant Motion for Class Action Determination Under Second Amended Complaint.

## II. JURISDICTION

■ Plaintiff asserts that this Court has jurisdiction over a nationwide class action under 28 U.S.C. § 1332, which provides in pertinent part that "(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between— (1) citizens of different states...." While Plaintiff and Defendant are citizens of Florida and Illinois, respectively, and therefore the proposed class action easily satisfies the diversity of citizenship requirement,[2] the satisfaction of the amount in controversy requirement is more problematic.

The Supreme Court has established quite stringent standards for the amount in controversy requirement in class actions. In *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), the Court held that the named plaintiff in a class action must meet the $10,000 threshold requirement and that other class members' claims could not be aggregated to meet the statutory test of jurisdiction. In *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), the Court affirmed Snyder's prohibition on aggregation, going further to require that even where the named plaintiffs each satisfy the

jurisdictional amount requirement, unnamed class members as well each must satisfy the jurisdictional amount.

■ Plaintiff posits three alternative theories to establish a jurisdictional basis for a nationwide class action thereby circumventing any obstacles posed by *Snyder* and *Zahn*. *First*, Plaintiff alleges that his individual damages are well in excess of $10,000 and that this Court has removal jurisdiction over separate and distinct class members' claims under 28 U.S.C. § 1441(c). *Second*, Plaintiff alleges that the class members' interests are not separate and distinct, but instead amount to a common and undivided interest in Defendant's divisible surplus in each upcoming year. Thus, Plaintiff seeks to come under the exception carved out in *Zahn* which permits the aggregation of claims where plaintiffs seek to assert a common and undivided interest. *Third*, Plaintiff asserts that the amount in controversy requirement may be looked at from the standpoint of either the plaintiff or the defendant, and the cost to Defendant from the injunctive relief requested in the complaint will be well in excess of the $10,000 minimum jurisdictional requirement. Because we find this Court to be ultimately without subject matter jurisdiction over the proposed nationwide class,[3] it is essential to examine at length the merits of each of Plaintiff's contentions.

### A. *Plaintiff Indianer's Individual Damages.*

In *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938), the Supreme Court held that "Unless the law gives a different rule, the sum claimed by the

---

**2.** If one member of a class is of diverse citizenship from the class' opponent, and no non-diverse members are named as parties, the suit may be brought in federal court. *See Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921).

**3.** The issue of subject matter jurisdiction can, of course, be raised at any time during an action and a determination on the issue is never law of the case. *See, e.g., Amen v. City of Dearborn*, 718 F.2d 789, 794 (6th Cir.1983), *cert. denied,*

465 U.S. 1101 (1984). Although Judge King already addressed the issue of subject matter jurisdiction and determined it to be present, *see* Order dated January 11, 1985, this determination was in the context of a motion to remand, not in the context of a class action certification. Because Plaintiff's attempt to expand the state class into a nationwide class creates new issues which might affect subject matter jurisdiction, we properly address the issue of subject matter jurisdiction *de novo* at this time.

plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Despite Plaintiff's good faith allegations and proofs, however, we find that it appears to a legal certainty that Plaintiff's alleged individual damages do not meet the requisite jurisdictional amount.

Plaintiff first contests Franklin's method of calculating past damages for the 1981–1985 period.[4] Franklin alleges that Plaintiff's damages equal the difference between (1) the dividends he would have received had Franklin not differentiated between borrowers and non-borrowers, and (2) the dividends he actually received under Franklin's new dividend policy, which amounts to only $1,112.25. Plaintiff contends rather that his damages equal the difference between (1) the dividends he would have received had he made himself a non-borrower by paying back his loans in 1981 and (2) the dividends he actually received from 1981–85, which amounts to $3,701.95. We find it unnecessary to determine which method of computation of damages is the correct one because Plaintiff's actual damages to date cannot satisfy the jurisdictional minimum under either approach. Nor, in our judgment, can the "future damages" which Plaintiff alleges bring him over the amount in controversy threshold.

Plaintiff asserts that his "past damage" figure of $3,701.95 averages out to about $740 a year. Using the $740–per-year dividend penalty and projecting it from the 1981 implementation date through his life expectancy, Plaintiff calculates that his dividends under the policy will be reduced by dividend penalties of approximately $18,500. This Court does not dispute the "good faith" of Plaintiff's calculation. However, we disagree with Plaintiff's assertion that under the facts of the instant case, *future* reductions in dividends are proper for con-

sideration in determining whether the amount in controversy requirement has been met.

Although Plaintiff correctly cites *Broglie v. Mackay-Smith,* 541 F.2d 453 (4th Cir. 1976) for the proposition that "[d]amages which the plaintiff claims will accrue in the future are properly counted against the jurisdictional amount if 'a right to future payments ... will be adjudged in the present suit,'" *id.* at 455, the rule is inapposite in Plaintiff's case. Not only is the rule taken out of context, but more importantly, no right to concrete future payments can be adjudged in the present suit.

According to Professor Moore, whom the Fourth Circuit cited approvingly in *Broglie* as support for its proposition, the above-stated rule derives solely from cases involving workmen's compensation benefits. J. Moore, Moore's Federal Practice ¶ 0.93 [5.–3] (2nd ed. 1986). Professor Moore distinguishes suits for disability benefits under an insurance policy where the courts have held that only payments due at the time suit is filed may be used in computing the amount in controversy. For instance, in *Mutual Life Insurance Co. v. Moyle,* 116 F.2d 434, 435 (4th Cir.1940), the court held that "[t]he company is *obligated* to make [disability] ... payments only so long as the condition evidencing total and permanent disability continues; and as this condition, theoretically at least, *may change at any time, it is impossible to say that any controversy exists as to any disability payments except such as have accrued.*" (emphasis added). Despite the court's willingness to consider future payments for the jurisdictional amount in workmen's compensation cases, but not in insurance disability cases, both types of cases are nevertheless alike in that they both involve a contract-based claim to future payments. In this respect they are sharply distinguishable from the instant case.

In this case, it is clear that Plaintiff has no legal or contractual right to any future

---

**4.** The 1981–1985 time period covers the time from when Franklin implemented the borrower/non-borrower distinction in dividend pay-

ments until the filing of the Second Amended Complaint.

benefits because future dividend payments lie wholly in Franklin's discretion. "It is well settled that when an *unconditional* right to future payments exists, the court may consider such payments in computing the amount in controversy." *Lenox v. S.A. Healy Co.*, 463 F.Supp. 51, 52 (D.Md.1978) (citing *Aetna Casualty & Surety Co. v. Flowers*, 330 U.S. 464, 467–68, 67 S.Ct. 798, 800, 91 L.Ed. 1024 (1947)). In *Aetna*, the Supreme Court allowed consideration of future payments to be proper for the amount in controversy requirement, only because "the right to *all* the payments [was] in issue." *Aetna*, 330 U.S. at 468, 67 S.Ct. at 800, 91 L.Ed. 1024. The *Lenox* and *Aetna* cases are distinguishable from the instant case because here no *unconditional* right to future payments could ever exist under the insurance contract nor could a right to *all* the payments ever be in issue since it is up to Franklin to decide whether or not to pay a dividend in any given year.

The insurance contract states only that "at the end of the second and each succeeding policy year, this policy, while in force ... shall be credited with *such share* of the divisible surplus from the participating business *as determined and apportioned by the company*." (emphasis added). It is conceivable that the company may have *no* divisible surplus at the end of any given year in the future, or that the divisible surplus will be quite reduced compared to preceding years. Any number of variable factors may affect the amount of "surplus" available for distribution—interest rates may skyrocket, investments may go bad, the company may experience other unpredictable financial burdens which will drain the amount available for dividend distribution. Franklin is essentially no different from any other corporation which has been paying yearly dividends, but which is under no obligation to its shareholders to continue to do the same if finances do not permit. As the United States District Court for the Southern District of Iowa has quite recently explained in a very similar case which it dismissed after finding the amount in controversy requirement not to have been satisfied, "There is no guarantee in the insur-

ance contract between plaintiff and defendant that any dividends will be paid. The projections of future dividends relied on by plaintiff are not guaranteed.... The amount and the existence of plaintiff's future loss of dividends are thus speculative and probably need not be considered at all." *Burns v. Massachusetts Mutual Life Insurance Co.*, 653 F.Supp. 77, 79 (S.D.Iowa 1986).

The court in *Burns* relied upon *Johnson v. County of Chester*, 413 F.Supp. 1299 (E.D.Penn.1976), in support of its determination that the amount in controversy requirement had not been met. *Johnson* involved an action under the Housing and Community Development Act of 1974 whereby low-income and non-white citizens sought to enjoin the transfer of earmarked federal funds to Williston Township over a three year period. The court held that only the first year's payment could be considered for jurisdictional purposes. It said,

the "matter in controversy" is the first year funding for the construction of storm sewers by Williston Township. That sum is $9,000. The funds earmarked for the second year, $18,000 are not "ripe" for controversy ... Given the review powers of the Secretary pursuant to §§ 5304(d) and 5311(a), a determination of non-compliance may result in the withholding of the projected second year funding. Under these circumstances, aggregating the projected funds for the second year to compute the amount in controversy is unwarranted because there is presently no basis upon which to assume that the amount for the second year will be the subject in controversy.

*Id.* at 1308–09.

A right to future dividends cannot be at issue in the instant suit because here like in *Johnson* the payment of future dividends is a matter wholly within the Defendant's discretion, and the amount is altogether speculative. Plaintiff's alleged future damages are not now "ripe" for consideration. We are therefore compelled to find that it appears to a legal certainty that from the viewpoint of individual dam-

ages, the amount in controversy between Plaintiff Indianer and Defendant Franklin Life is less than $10,000. The merits of Plaintiff's claim for removal jurisdiction over separate and distinct class members' claims under 28 U.S.C. § 1441(c) need not be addressed because Plaintiff has not established that his own damage claim was properly removable.[5]

### B. The Common and Undivided Interest Claim

In *Troy Bank v. G.A. Whitehead & Co.*, 222 U.S. 39, 40–41, 32 S.Ct. 9, 56 L.Ed. 81 (1911), the Supreme Court set down the rule for aggregation of claims:

> When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.

In *Zahn* and *Snyder*, the Supreme Court specifically applied this rule to class actions under Rule 23 of the Federal Rules of Civil Procedure.

While acknowledging that class members' claims for past damages are separate and distinct, Plaintiff argues that policyholders have a common and undivided interest with respect to the divisible surplus in each upcoming year *at the point of time* before the formula for division is determined. Until the formula for sharing out the divisible surplus is actually applied, Plaintiff contends, all of the participating policyholders have a single title or right to the divisible surplus as a group and no one of them has a right to any identifiable dollar amount.

It is well established that the claims of policyholders against an insurance com-

pany derive from their respective insurance contracts and are thus separate and distinct. They may not therefore be aggregated to satisfy the jurisdictional amount required by 28 U.S.C. § 1332(a). *See Alvarez v. Pan American Life Insurance Co.*, 375 F.2d 992, 993–94 (5th Cir.1967) ("rights due under an insurance contract are those of creditor and debtor, and are several and distinct from claims which other contract holders may have against the same insurance company"), *cert. denied*, 389 U.S. 827, 88 S.Ct. 74, 19 L.Ed.2d 82 (1967); *Troup v. McCart*, 238 F.2d 289, 296 (5th Cir 1957) ("These certificates, insofar as they dealt with money or property values, were nothing more than policies of life insurance and each certificate constituted a separate contract with the Society and no certificate-holder had any interest in the contract between any other certificate-holder and the Society. There was no joint or common obligation owed by the Society to the several certificate-holders"). Plaintiff claims that *Alvarez* and *Troup* are distinguishable because the policyholders in those cases were seeking past benefits or sums from past wrongs, as to which a specific dollar amount could be assigned. To the contrary, we think that class members' claims to future allocable surpluses are nevertheless as separate and distinct as the claims made in *Alvarez* and *Troup*.

To the extent that plaintiff class members seek to enforce a non-discriminatory allocation of dividends in the future and prevent future reductions in dividends which might be properly owing to each participating policyholder, each class member's claim is still separate and distinct, grounded in his individual contract and governed by the amount of each individual policy and the amount which has been borrowed against it. This Court has already determined that future damages based upon matters wholly within Defendant's

---

**5.** 28 U.S.C. § 1441(c) provides:

Whenever a separate and independent claim or cause of action would be removable if sued upon alone, is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

discretion are speculative in nature and are not proper for consideration in determining the amount in controversy in the instant case. We think that Plaintiff's attempt to recast its claim from one seeking to recover future damages into a common and undivided claim to Defendant's allocable surplus at a precisely defined point in time every year must be rejected. The facts of the instant case do not comport with those which have been deemed proper for aggregation due to the common and undivided nature of the claim.

Plaintiff and Defendant disagree on the *factual* question of whether or not a common surplus "fund" exists at any specified point in time. Defendant contends that no fund exists and that it pays dividends out of its cash flow. Even assuming *arguendo* that Plaintiff is correct in its factual assertion that a "fund" does exist at a brief period in time each year, the instant case nevertheless fails the "interest in distribution test" as set out more fully in *Berman v. Narragansett Racing Association,* 414 F.2d 311 (1st Cir.1969), *cert. denied,* 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1970), which Plaintiff cites in support of its claim, and *Bass v. Rockefeller,* 331 F.Supp. 945 (S.D.N.Y.), *vacated and remanded on other grounds,* 464 F.2d 1300 (2nd Cir.1971). "The interest in distribution test indicates that a common and undivided claim exists when the adversary of the class has no interest in how the claim is to be distributed among class members." *Bass,* 331 F.Supp. at 950. We think this is a proper test to be applied when plaintiffs claim a common and undivided interest in a future fund, as in the instant case.[6]

In *Bass,* welfare recipients individually and on behalf of others similarly situated sued various New York state officials to enjoin the state from cutting back its expenditures on Medicaid for the medically needy. The court determined that the amount of controversy was the amount by which the state intended to cut back these expenditures. *Id.* at 952. Applying the "interest in distribution" test to allow aggregation, the court held that "[t]he defendants, various New York state officials, although concerned with whether the state can cut back Medicaid expenditures prior to approval by the Secretary, have no interest in the apportionment of these monies among the medically needy." *Id.* at 950.

*Berman* similarly dealt with a case in which the defendant had no interest in the distribution of individual amounts of money to plaintiff class members. A group of horseowners who had won purses at defendant's race track sued under an agreement whereunder they were to receive 44.7 percent of the track's annual share of the purses. The court allowed aggregation of claims to reach the jurisdictional amount. However, important to the court's decision was the fact that under the agreement the track was merely to pay the 44.7 percent to the horseowners *as a group.* "No contractual rights [were] created between the defendants and individual pursewinners, and plaintiffs make no specific claims for individual payment," 414 F.2d at 315.

---

6. We acknowledge the existence of other "tests" for determining a common and undivided interest suitable for aggregation, *see, e.g., Sellers v. O'Connell,* 701 F.2d 575, 579 (6th Cir.1983) ("[a]n identifying characteristic of a common and undivided interest is that if one plaintiff cannot and does not collect his share, the shares of the other remaining plaintiffs are increased"); *see also* the authorities cited in *Eagle v. American Tel. and Tel. Co.,* 769 F.2d 541, 546 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1465, 89 L.Ed.2d 721 (1986). However, Plaintiff has not demonstrated that the instant case satisfies any test or that the instant case is factually similar to any case allowing aggregation. For instance, Plaintiff fails the test in *Sellers* because Plaintiff has alleged that the common and undivided interest exists *only* at that precise point in time before a distribution formula has been determined. However, since *no* policyholder can collect a share at this point in time, it is impossible that the shares of other policyholders will be increased if one plaintiff cannot or does not collect his share. Moreover, *Eagle v. American Tel.* (allowing aggregation of claims where shareholders sue to *recover* assets for the corporation, even if individual shareholders will ultimately benefit individually), which Plaintiff has moved the court to accept as supplemental authority, is factually distinguishable.

■ The instant case is distinguishable from *Berman*, for Plaintiffs do not seek to recover a fund as a group. Nor is this suit intended to change the aggregate amount available for distribution each year as in *Bass*. Plaintiffs seek only to change the method by which the yearly aggregate is distributed. Their claims for a different distribution arise from their separate and distinct contracts and Defendant has a direct interest in how the fund is distributed. Under the rule set out in *Bass* and *Berman*,[7] it is clear that plaintiffs' interests are separate and distinct and they may not aggregate their claims.

### C. *Injunctive Relief—Impact on Defendant*

There is no question that the cost to Franklin of compliance with an injunction would be in excess of $10,000. Franklin has stated under oath that it would have to rewrite computer programs to comply with an injunction enjoining the payment of less-er dividends to borrowing policyholders than to non-borrowing policyholders and the cost would exceed $10,000. This Court must therefore decide whether plaintiff is correct that such a pecuniary impact upon the Defendant is a proper means of satisfying the amount in controversy requirement where Plaintiff's monetary damages are patently insufficient.

There is a split in authority on the question of from which viewpoint the jurisdictional amount should be viewed. Professor Wright has argued that *either party's* viewpoint "seems to be the desirable rule, since the purpose of the jurisdictional amount requirement—to keep trivial cases away from the court—is satisfied when the case is worth a large sum to either party." 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3703 (1985). Although we agree that this is the better approach to jurisdiction and find it permissible in non-class suits,[8] several

---

**7.** The rule set out in *Berman* and *Bass* is the "interest in distribution" test for common and undivided interest. However, both *Berman* and *Bass* in allowing aggregation, deemed it significant that one plaintiff's rights are affected by those of co-plaintiffs and in *Bass* the court said that aggregation may *also* be allowed under what is termed the "essential party test" that is, where none of the class members could bring suit *without directly affecting the rights* of his co-parties. 331 F.Supp. at 950.

While we do not dispute the possibility of an alternative to the "interest in distribution test," we think that the requirements of the "essential party test" should be given a strict reading. As the Fifth Circuit made clear in *Eagle Star Insurance Co. v. Maltes*, 313 F.2d 778, 781 (5th Cir. 1963), it is not enough that plaintiffs have a common interest in the result of a suit because it is true in every class suit that there is a common question of fact or law which, if decided in favor of the defendant, may well be decisive against all plaintiffs. In *Berman* it is made clear that rights of co-parties are affected because a true common fund exists and they have no individual contractual claims to relief. The "essential party test" should be limited to similar factual situations, where plaintiffs truly have a joint interest in the fund.

**8.** Although this is a question of first impression in the Eleventh Circuit, the Fifth Circuit, whose decisions prior to October 1, 1981 are binding on the Eleventh Circuit, *see Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981), has clearly moved away from the "plaintiff's viewpoint" rule to which it once adhered. In *Alfonso v. Hillsborough County Aviation Authority*, 308 F.2d 724, (5th Cir.1962), a case alleging an "unlawful taking," the court held that the amount in controversy should be determined by the value of the right the plaintiff homeowners sought to protect by their suit (the individual damage to each home) rather than the value of the air rights to the defendant. *Id.* at 727. However, in *Duderwicz v. Sweetwater Savings Association*, 595 F.2d 1008 (5th Cir.1979), the Fifth Circuit seemed to adopt the "either party" view, holding that the district court had subject matter jurisdiction based on the financial burden of an adverse ruling upon the defendant. *See id.* at 1014.

In *Duderwicz*, several borrowers brought separate diversity actions against a lender seeking forfeiture of the interest charged under allegedly usurious notes. The lender argued that the amount in controversy was only the interest that the borrowers had already paid, and no borrower had paid more than $10,000 in interest. The Court found that the amount in controversy was satisfied by the pecuniary consequence forfeiture would have on the defendant. It explained that "the value of the matter in controversy is measured not by the monetary judgment which the plaintiff may recover, but on the judgment's pecuniary consequence to those involved in the litigation." *Id.* at 1014 (citing *Thomson v. Gaskill*, 315 U.S. 442, 447, 62 S.Ct. 673, 675–76, 86 L.Ed. 951 (1942) ("In a

courts addressing the issue have held, and we think properly, that the Supreme Court's rule against aggregation in *Snyder* precludes the extension of this rule to diversity class actions involving separate and distinct claims.

In *Massachusetts State Pharmaceutical Association v. Federal Prescription Service*, 431 F.2d 130 (8th Cir.1970), for example, the court explained that the Supreme Court's holding in *Snyder* was a clear endorsement of the "plaintiff's viewpoint" approach. "The holding can only be interpreted as precluding the valuation of the amount in controversy from the defendant's viewpoint. [For a court now] to hold otherwise would in effect permit aggregation of claims contrary to the teaching in Snyder." *Id.* at 132 n. 1.

Nevertheless, the Plaintiffs have argued here with considerable force that the impact on Franklin from having to comply with an injunction is not necessarily the same as aggregation of the individual damage claims. Were injunctive relief to be actually granted, Franklin would suffer an additional financial burden of greater than $10,000, none of which is attributable to damages that would have to be paid.

In *Barton Chemical Corp. v. Avis Rent A Car Systems, Inc.*, 402 F.Supp. 1195 (N.D.Ill.1975), the plaintiff class alleged that the defendant, Avis Rent A Car, charged higher rates for airport rent-a-cars than for comparable rent-a-cars in the city. Defendant argued that if the plaintiff class were to succeed on the merits and an injunction were to issue, it could suffer losses of annual revenues approaching $372,-000. *Id.* at 1197. Although none of this $372,000 was attributable to damages, the court held that "Under *Snyder*, . . . we are barred from accepting such analyses since they reflect an aggregation theory, albeit indirect, of net loss. Particularly where as here, the equitable relief sought is but a means through which the individual claims

diversity litigation the value of the 'matter in controversy' is measured not by the monetary result of determining the principle involved, but by its pecuniary consequence to those involved in the litigation.")); *Beacon Construction Co. v.*

may be satisfied, the ban on aggregation would apply with equal force to the equitable as well as the monetary relief." *Id.* at 1197–98. *See also Snow v. Ford Motor Co.*, 561 F.2d 787, 790 (9th Cir.1977); *Lonnquist v. J.C. Penney Co.*, 421 F.2d 597 (10th Cir.1970).

While the aforementioned cases have refused to adopt a "defendant's viewpoint" approach to jurisdictional amount in class actions, a recent decision involving this same issue in *Martin v. Granite City Steel Corp.*, 596 F.Supp. 293 (S.D.Ill.1984), has taken a different "viewpoint" of this matter. *Martin* involved a proposed class action against a steel company for an injunction against the recycling of coal by-products, and for compensatory and punitive damages for the alleged intentional exposure of plaintiff workers and area residents to toxins and carcinogens. In Count II of their complaint, plaintiffs specifically requested medical attention for all class members. The defendants stated in affidavit that the cost for a detailed medical exam would be in excess of $150.00 per person, which would amount to $450,000 for all of its employees. They also affirmed that it would cost them in excess of $10,000 each year to dispose of the by-products rather than recycling them. The court held that

> under the "either viewpoint rule," the Court must take into consideration over $450,000 as the valuation of the equitable relief sought. Hence, based on the above discussion, the Court must add an amount for punitive damages and for the equitable relief sought to the compensatory damages in determining whether the jurisdictional minimum has been met. . . . This court cannot say to a legal certainty that the total award will not yield more than $10,000 to each successful claimant.

*Id.* at 297.

■ Although the issue of whether the defendant's viewpoint approach is proper in

*Matco Electric Co.*, 521 F.2d 392, 399 (2nd Cir. 1975) ("[T]he amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequence which may result from the litigation.").

class actions involving separate and distinct claims is both debatable and a matter unresolved in this circuit, we think the better answer is that *Snyder* can only be interpreted as precluding the valuation of the amount in controversy from the defendant's viewpoint. Any other result would have the necessary consequence of permitting the aggregation of claims in flat violation of the teachings of *Snyder*. However, even if we were to find that the impact upon the defendant *is* a proper means of satisfying the jurisdictional amount requirement, this Court would still not have subject matter jurisdiction over the proposed nationwide class suit. Because we find the class members' claims for injunctive relief to be disparate rather than common, and that they must therefore be dropped from the class suit to be litigated on a state-by-state basis, the plaintiffs in the instant case would be unable to take advantage of a "defendant's viewpoint" rule to establish subject matter jurisdiction over the "past damage" claim left in their nationwide class suit.

## III. THE RULE 23(a)(2) CLAIM—COMMON AND DISPARATE ISSUES

Rule 23(a) of the Federal Rules of Civil Procedure provides:

Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all *only* if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Defendant does not dispute satisfaction of the numerosity requirement. Joinder into one suit of over 170,000 plaintiffs residing nationwide is clearly impracticable. Since Defendant's arguments regarding the typicality and adequate representation requirements to a substantial degree hinge upon our resolution of the commonality

issue—the focal point of the parties' dispute—it is to the alleged common issues of law and fact that we now turn.

In addition to noting that Defendant's conduct toward all class members is the same and that the class members' policies are the same in all material respects, Plaintiff, in his original motion, asserted the following to be issues of law or fact common to the class:

(a) Whether Franklin Life's discriminatory allocation and distribution of the annual divisible surplus constitutes a breach of fiduciary duty by Franklin Life.

(b) Whether Franklin Life has breached the class members' participating policies by effectively imposing interest charges in excess of the contractually stipulated rates.

(c) Whether Franklin Life has converted sums rightfully belonging to the class members, i.e., those sums by which their dividends were reduced.

(d) Whether Franklin Life should be enjoined from utilizing a formula which discriminates between borrowing and non-borrowing policyholders in the allocation of the annual divisible surplus, and should be required to account for and repay as damages the amounts by which class members' dividends have been reduced or paid in lesser amounts under said formula.

Defendant plainly is correct that Plaintiff's breach of fiduciary duty and conversion claims are dependent upon a finding of unfair discrimination to establish wrongfulness—the breach and wrongful taking, respectively. According to the assertions contained in paragraph (d), the issue of whether an injunction, an accounting, and damages are appropriate is likewise dependent upon a finding on the issue of discrimination. Only Plaintiff's claim for breach of the loan interest provision in the policy is unrelated to a determination on discrimination.

Franklin's policy on its face does not prohibit differences in dividend payments to individual policyholders. Essentially,

whether or not the borrower/non-borrower distinction in dividend payments constitutes discrimination against policyholders of the same class is a matter of state insurance law governing discriminatory treatment between policyholders. It is clear from Plaintiff's allegation in the Second Amended Complaint that "[a]ll fifty states of the United States have statutes prohibiting insurance companies from unfair discrimination in their treatment of life insurance policyholders," and that he recognized that separate state insurance statutes were the basis of any unfair discrimination claim which could be made. Plaintiff was able to make his unfair discrimination claims because each Franklin Life insurance policy expressly incorporated the insurance laws of the policyholder's state. However, even if the policies had not incorporated state insurance law, Florida choice of law rules provide that insurance contracts are governed by the law of the place where the contract was consummated, *Amica Mutual Insurance Co. v. Gifford,* 434 So.2d 1015, 1017 (Fla. 5th DCA 1983), and thus state insurance law would inevitably apply to claims under each contract.

If state insurance laws prohibiting unfair discrimination were facially similar, Plaintiff's contention that these statutes all contain a common bar against Franklin's dividend program might appear more meritorious. However, not only are state prohibitions on discrimination in insurance facially dissimilar, but they have been interpreted differently as well. For instance, two state administrative agencies, namely the Texas Insurance Department and the Illinois Insurance Department have expressly approved Franklin's dividend enhancement program under the insurance laws of their respective states.

■ Assuming *arguendo* that at least with respect to some states Plaintiff will be correct in his contention that Franklin's policy is discriminatory under state insurance law,[9] it becomes apparent that the

discrimination-based claims will be governed by a disparate body of law. Because varying state laws will therefore govern the substantive rights of class members on the breach of fiduciary duty, breach of contract via breach of incorporated anti-discrimination statutes, and conversion claims, these claims are not proper for class treatment and accordingly are non-certifiable. *See, e.g., Elster v. Alexander,* 76 F.R.D. 440, 442 (N.D.Ga.1977) (where claim of "common law fraud would involve the laws of all 50 states," and "no single law governs the entire class, the allegations of common law fraud cannot be shown to warrant class treatment"), *appeal dismissed,* 608 F.2d 196 (5th Cir.1979). Plaintiff in his reply brief has obviously realized the impropriety of the discrimination-based class claims. He has explicitly dropped the breach of fiduciary duty and breach of contract theories based on incorporated provisions of state insurance law and confined the common question of law in the nationwide suit to the singular issue of whether the contract loan interest provision has been breached—a question whose resolution Plaintiff alleges, requires no reference to insurance law.

Under the rule stated in *Amica Mutual,* different state laws would apply to each plaintiff's claim for breach of the insurance contract. For instance, Florida law would apply to Plaintiff Indianer's claim for breach of the loan interest provision in his contract. If, in fact, the relevant law on breach of the loan interest provision differs from state to state, then the sole remaining breach of contract claim would not be certifiable for the reasons stated above in reference to the discrimination claims. However, if the relevant law does not vary from state to state, the application of Florida law to nationwide class members' claims would seem to be immaterial. *Cf. Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 2977, 86 L.Ed.2d 628 (1985). In the instant case neither Plaintiff nor Defend-

**9.** We do not decide the question of whether the federal courts may rule on whether or not a policy like Franklin's is discriminatory where there has been no state administrative agency ruling.

ant have provided this Court with a survey of the various states' laws which would govern the issue of breach of the loan interest contract provision. Contrary to Plaintiff's contention, the Supreme Court in *Shutts* did *not* hold that absent a showing that the law of other states conflicts with that of the forum state, it will be assumed that the laws are the same.[10]

While several courts have presumed the different state laws governing breach of contract claims to be varying and have denied class certification on that basis, *see, e.g., Schmidt v. Interstate Federal Savings & Loan Association*, 74 F.R.D. 423, 429 (D.D.C.1977) (denying certification where "it would likely be necessary to apply three separate and possibly inconsistent bodies of law to the breach of contract and unjust enrichment claim"); *McMerty v. Burtness*, 72 F.R.D. 450, 456 (D.Minn.1976) ("this claim presents issues of law which will vary from class member to class member, depending upon which state's common law of contracts governs"), they have not discussed how the relevant contract law might in fact differ.

It would be wrong to conclude that breach of contract claims are never appropriate for nationwide class treatment. "If breach of contract cases were meant to be excluded from the Rule's coverage, Congress would have so specified." *Kleiner v. First National Bank of Atlanta*, 97 F.R.D. 683, 693 (N.D.Ga.1983). "When viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such." *Id.* at 692. Although the *Kleiner* court recognized that the loan agreements of class members would be governed by the laws of Virginia, Tennessee, South Carolina, Georgia, and North Carolina, it held that "the application of various state laws would not be a bar where, as here, the general policies underlying common law rules of contract interpretation tend to be

uniform." *Id.* at 694. *See also Coca-Cola Bottling Co. v. Coca-Cola Co.*, 98 F.R.D. 254 (D.Del.1983) (allowing class treatment of the issue of interpretation of Bottler's Consent Decrees, even if other contract issues of law and fact which varied among class members had to be pursued separately).

We believe that the rationale of *Kleiner* should control in the instant case. Whether the contract's loan interest provision has been breached is a pure and simple question of contract interpretation which should not vary from state to state. It is unlikely that the application of Florida's rules of contract interpretation would be any different from any other state's rules or adversely affect any class member's substantive rights. In Florida, "A contract will be construed according to its own clear and unambiguous terms." *See, e.g., Cueto v. John Allmand Boats, Inc.*, 334 So.2d 30, 32 (Fla. 3d DCA), *cert. denied*, 341 So.2d 290 (Fla.1976). "Under Florida law, in interpreting the words of a clearly-worded insurance policy ..., the court may not add or subtract language from face of instrument, and may not make a new contract for the parties where their intent can easily be inferred from the contract itself." *Quesada v. Director, Federal Emergency Mgmt. Agency*, 577 F.Supp. 695, 697 (S.D.Fla. 1983), *aff'd.*, 753 F.2d 1011 (11th Cir.1985).

■ Accordingly, we find that the breach of the loan interest provision question is sufficiently *common* among nationwide class members. Although this Court recognizes that it has the discretion generally to separate allegations suited for class treatment from those that are not, *Elster*, 76 F.R.D. at 443, we nevertheless determine that even this common question is here unsuited for class action treatment under Rule 23. Thus, even if we were to assume that the amount in controversy requirement may be satisfied by gauging the impact upon the Defendant of complying with an injunction, without the inclusion of the discrimination claims there is no juris-

---

10. The Court in *Shutts* would have had no basis for such a holding because the Petitioner point-

ed out the differences between the various state laws.

dictional basis to support consideration of the simple breach issue. In short, this breach of contract claim, standing alone and without even an arguable claim for injunctive relief, fails to put in controversy a sufficient amount to take the nationwide class over the $10,000 threshold. The sole relief possible if Plaintiffs were to prevail on the breach issue, would be individual damages or "surplus interest" up until the time of suit—an amount less than $10,000 which may not be aggregated with the damages of other class members to reach the jurisdictional amount. There is no federal subject matter jurisdiction for the nationwide class to bring a pure damage action. Therefore, Plaintiff's Motion for Class Action Determination Under the Second Amended Complaint must be and is hereby DENIED.